## In re GOTHAM CAN CO.

## MERCHANTS' TRANSFER & STORAGE CO. v. RAFFERTY.

### No. 347.

Circuit Court of Appeals, Second Circuit.
April 6, 1931.

Oppenheimer, Haiblum & Kupfer, of New York City (Eli S. Silberfeld, of New York City, of counsel), for petitioner-appellant. Merchants' Transfer & Storage Company.

Joffe & Joffe, of New York City (Louis Joffe, of New York City, of counsel), for respondent-appellee trustee in bankruptcy.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Merchants' Transfer & Storage Company, hereafter called finance company, advanced money to Gotham Can Company, the bankrupt, prior to its adjudication, upon the security of accounts receivable assigned by the latter. The contract of the parties provided that the finance company should advance in cash 77 per cent. of the face value of the accounts and the remaining 23 per cent. upon collection of the accounts subject to the following charges:

(a) A charge of $5 per thousand on the first $100,000 of accounts assigned during any one year.

(b) A "service charge" of one-thirtieth of 1 per cent. per day upon the outstanding balance of uncollected accounts.

(c) Attorneys' fees and other expenses incurred by the finance company in the collection of accounts not paid in full at maturity.

The bankrupt agreed to collect the accounts and to remit the proceeds in specie to the finance company. On October 3, 1929, when the adjudication in bankruptcy occurred, the finance company held accounts having a face value of $10,674.97 as security for actual cash advances of $8,231.25. After the bankruptcy, the finance company made collections of these assigned accounts to the amount of $8,156.21, and the trustee to the amount of $529.52. On February 28, 1930, the finance company filed a proof of debt against the bankrupt estate, and in March, 1930, it filed a petition praying that the trustee pay over the above collections of $529.52 in his hands, together with any further collection which he had received. As a basis for its petition, the finance company claimed that there was due it the following sums:

| | |
|---|---|
| Amount advanced by it in excess of collections which it had received from assigned accounts | $ 75.04 |
| Service charges accrued after adjudication at the rate of one-thirtieth of 1 per cent. per day on outstanding accounts | 384.87 |
| Disbursements after adjudication incurred in collecting accounts | 29.95 |
| Attorneys' fees | 300.00 |
| | $789.86 |

According to the contention of the finance company, there was therefore a balance of $260.34 due it in excess of the $529.52 representing accounts which the trustee had collected.

The trustee filed a cross-petition asking that the proof of claim of the finance company be expunged, that the service charges for $384.87 and the miscellaneous charges for $29.95 be disallowed, and that an allowance of reasonable attorneys' fees be made by the court. The District Court directed the finance company to turn over the uncollected accounts receivable, then amounting to $1,854.57, to the trustee upon payment by him of $75.04, which was the difference between $8,231.25, the amount due at the date of adjudication, and the $8,156.21, which it had collected from the accounts. The court also ordered the referee in bankruptcy to fix the reasonable value of the fees of the attorneys for the finance company and expunged the latter's claim.

The court rejected the item of $384.87 for service charges on the ground that it in fact represented interest and that under the rule of Sexton v. Dreyfus, 219 U. S. 339, 31 S. Ct. 256, 55 L. Ed. 244, interest should not be allowed after the filing of the petition in bankruptcy.

The arrangement between the parties was in form a sale of accounts receivable with an agreement on the part of the finance company to advance 77 per cent. of the face value of the accounts at once, and to advance the remaining 23 per cent. as soon as it might be received from the payment of the accounts, after deducting therefrom the charge of $5 per thousand on the first $100,000 of accounts, the charge of one-thirtieth of 1 per cent. on all unpaid accounts, and, in the event of bankruptcy or other default, expenses incurred in making collections.

The finance company might be regarded as entitled to hold the accounts until they were all collected, even though its cash advances and expenses up to any particular date were satisfied. If so, the one-thirtieth of 1 per cent. daily charge could continue to roll up so long as any accounts remained unpaid. And this would be true whether the transactions were regarded as sales or loans. We think they were not sales, and to regard them as loans which Gotham Can Company could not pay off until all the accounts were collected seems an unreal interpretation of the arrangement. Such a construction would imply that the Gotham Can Company borrowed on time and had no right to pay off its obligations until the accounts were all collected. No such obligation fairly appears from agreement of the parties.

The transactions were had under a contract whereby the Gotham Can Company warranted that every account assigned would be paid in full at maturity, and that, if it was not paid, the Gotham Can Company would make it good. Moreover, high rates were to be paid for its advances and these, together with its compensation and such expenses as might be involved in making collections, were to be paid out of the accounts. In decisions construing usury statutes, contracts of this kind have uniformly been held to be collateral loans. We see no reason to give them any other interpretation here. Home Bond Co. v. McChesney, 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444; In re Grand Union Co. (C. C. A.) 219 F. 353; National Trust & Credit Co. v. Orcutt (C. C. A.) 259 F. 830; Commercial Security Co. v. Holcombe (C. C. A.) 262 F. 657; Le Sueur v. Manufacturers' Finance Co. (C. C. A.) 285 F. 490. The obligation of the Gotham Can Company to repay all advances in full and to pay certain percentages for the use of the money, shows

542

that the transactions were essentially collateral loans, and not sales, and that the relations of the parties are governed by the decisions we have cited.

■ The loans have been repaid, except for the small balance of $75.04, and all other claims have been liquidated except the so-called service charges, disbursements, and attorneys' fees secured by the contract, so that the accounts ought to be returned to the trustee in bankruptcy whenever these latter items, or such of them as are proper charges against the collateral, are repaid.

■ As no proof of debt can include interest or other charges accruing subsequent to the filing of the petition in bankruptcy, the claim of the finance company was properly expunged. Sexton v. Dreyfus, 219 U. S. 339, 31 S. Ct. 256, 55 L. Ed. 244; Board of Com'rs of Shawnee County, Kan., v. Hurley (C. C. A.) 169 F. 92, page 96; Bankruptcy Act, § 63a, (1), 11 USCA § 103 (a) (1).

■ No one disputes that the balance of $75.04 should be repaid by the trustee out of the $529.52, which he has collected. The same thing, in our opinion, is true of the $29.95 representing petty disbursements incurred by the finance company in collecting the accounts. The attorneys' fees are in the same category (Boise v. Talcott [C. C. A.] 264 F. 61; In re Rosenblatt [D. C.] 299 F. 771; Security Mortgage Co. v. Powers, 278. U. S. 149, 49 S. Ct. 84, 73 L. Ed. 236), but they must be fixed by the court and not by the mere ipse dixit of the lender. When the finance company came into the bankruptcy court asking for payment of the proceeds of the accounts, it submitted itself to the jurisdiction, as indeed it seems to have conceded.

■ The only question remaining is whether it is entitled to payment of the $384.87 service charges out of the proceeds of the accounts in the hands of the trustee. This claim the court below disallowed upon the authority of Sexton v. Dreyfus, supra, but that decision has no bearing on the question in dispute here. It had nothing to do with the right of a creditor holding securities to have interest as well as principal paid out of the collateral, but related only to the amount for which a secured claim might be proved in bankruptcy. In that case the secured creditor had sold his collateral and sought to apply the proceeds first to the payment of interest accrued since the filing of the petition. Such a mode of marshaling, when the security was insufficient to pay the entire indebtedness, would increase the creditor's claim against the estate by the amount of interest accruing since the filing of the petition, though such interest could not in the ordinary case be included in his proof of debt. Bankruptcy Act, § 63a (1). The Supreme Court, following the English decisions, accordingly held that a creditor in such circumstances must first apply his security to the liquidation of the debt, with interest to the date of the petition. It was never suggested that he could not pay interest accruing up to the very date of payment out of the proceeds of the collateral if he might thus satisfy his entire claim. That he may do this has frequently been held, and any other result would be contrary to section 67d of the Bankruptcy Act (11 USCA § 107 (d), which provides that valid liens given for a present consideration shall not be affected by the act. Coder v. Arts (C. C. A.) 152 F. 943, 15 L. R. A. (N. S.) 372; San Antonio Loan & Trust Co. v. Booth (C. C. A.) 2 F. (2d) 590; People's Homestead Ass'n v. Bartlette (C. C. A.) 33 F.(2d) 561. Accordingly the item of $384.87 should be paid by the trustee out of the proceeds of the accounts in its hands.

The order of the District Court should be modified by directing the trustee to pay to the finance company from the proceeds of the accounts in his hands the foregoing items of $75.04, $384.87, and $29.95, and by directing the finance company to reassign to him any accounts remaining uncollected, as well as any proceeds from the accounts which may remain in its hands after the attorneys' fees incurred by it have been fixed by the District Court, or by agreement with the trustee, and paid.