In re RIDER.

No. 192.

District Court, S. D. Iowa, S. D.

Sept. 9, 1941.

M. P. Lawless and Glick Schultz, both of Chicago, Ill., and Floyd E. Billings and Clifford Powell, both of Red Oak, Iowa, for First Trust Joint Stock Land Bank of Chicago.

Ed. Fackler, Jr., of Corning, Iowa, for debtor.

DEWEY, District Judge.

This is a proceedings under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. Such proceedings were started by the filing of the debtor's petition on the 18th day of March, 1939. An offer of composition was denied and the debtor on or about the 19th day of July, 1939, amended his petition and asked to be adjudged a bankrupt under the provisions of Section 75, sub. s and he was so adjudged a bankrupt on or about the 31st day of July, 1939.

Only two claims were filed in the proceedings; one by the United States of America on two promissory notes executed to the Governor of the Farm Credit Administration, one note dated Jan. 30, 1935, for $350, with 5½% interest per annum, and the other dated in March, 1935, for $337, with 5½% interest per annum. The United States claims priority of payment under Title 11, Chapter 7, Section 104, and by virtue of Title 31, Chapter 6, § 191, of the U.S.C.A.

There was also filed the claim of the First-Trust Joint Stock Land Bank of Chicago, Ill., on a loan secured by the 202-acre tract described in the schedules for the sum of $19,112.20, as of May 1, 1939, and on a loan secured by the 118-acre tract described in the schedule of assets of the debtor in the sum of $15,435.60, as of May 1, 1939. The claim recites that proceedings for foreclosure of said mortgages have been instituted since May 3, 1934, in the District Court of Adams County, Iowa, and that a receiver in this foreclosure proceedings had in his hands approximately the sum of $2,122.20 in cash.

After the adjudication in bankruptcy a stay order was entered by the conciliation commissioner and the rentals on the real estate, which were to be paid to the conciliation commissioner, were fixed and established.

Upon the application of the secured creditor Mr. Eugene W. Mullin was appointed receiver by the conciliation commissioner in this proceedings and he received from Mr. W. H. Miller, receiver in the State court, $1,387.68, representing net rentals which had been paid to the State receiver for rental of the premises from the date of the institution of the foreclosure proceedings to March 1, 1939, less payments for taxes made by him and perhaps other expenses.

The receiver in his report to the conciliation commissioner, dated July 25, 1941, also shows receipts of $92.77 from the commissioner which he had collected; a receipt of $216.01 from the Soil Conservation Office, and other payments of $800 each from the bankrupt for the rentals of 1940. He shows disbursements, including a payment of the claim of the United States above referred to, filed by the Farm Credit Administration, in the sum of $647.75, and payment of the taxes and upkeep aggregating $1,785.72, leaving a balance to be distributed in the amount of $1,510.74. The total money received by the receiver as shown by his report is $3,296.46; total disbursements of $1,785.72; leaving the above balance to be distributed of $1,510.74.

The value of the real estate involved in these proceedings was fixed by order of the court in the sum of $15,000, and on April 15, 1941, the bankrupt tendered as a full payment of that sum to the conciliation commissioner $13,489.26 in cash and the sum of $1,510.74, being the balance for distribution above referred to and which the bankrupt claims, and the conciliation commissioner found, belongs to him when distribution was made. An order was made by the conciliation commissioner finding that these sums were a payment of the $15,000 appraised value of the real estate and ordered and directed that the real es-

tate be turned over to the bankrupt free and clear of all liens and encumbrances.

During the course of these proceedings many hearings were had before the commissioner and from some of these orders petitions of review were had to this court and the same came on for hearing at Des Moines, Iowa, on the 4th day of September, 1941, where all petitions for review were argued and submitted.

The orders upon which reviews are asked are as follows:

Order of July 21, 1941, directing distribution of the rentals.

Order of July 29, 1941, approving the final report of the receiver.

Order of August 4, 1941, granting an extension of the period for redemption to Sept. 7, 1941.

Order of August 15, 1941, relieving the debtor from paying rentals.

Order of August 15, 1941, made on tender of the amount for redemption.

Many of the orders upon which reviews are asked were made by the commissioner under the belief and finding on his part that the secured creditor was not entitled to have distributed to it any of the funds in the hands of the receiver, whether received from rentals or otherwise, and that therefore after paying off the preferred claim of the United States Government the balance in the hands of the receiver belonged to the bankrupt.

This position of the commissioner was based, according to the arguments of counsel at this hearing, upon three propositions: first, that the money in the hands of the receiver belonged to the general assets of the estate, and as the secured creditor had not filed any general claim but only its secured claims that it would not have a right to participate in the distribution; second, that as the bankrupt had paid to the conciliation commissioner the full amount of the appraised value that this was a payment in full of all debts and charges owed by the bankrupt and a full settlement with the secured creditor and that therefore the latter had no claim for any further or additional amounts in these proceedings; and, third, that when the appraisement is made of the real estate it fixes and establishes the value that a secured creditor has in and upon such real estate and that any payments that are made from the rents collected and paid to such secured creditor must be considered as payment on the principal of the indebtedness.

I am unable to agree with these contentions.

As to these latter contentions there has not as yet been a payment in full of the $15,000 to the conciliation commissioner, but even if there were such a payment it would not constitute a settlement in the sense that the secured creditor had agreed to accept the payment of the tendered amount in full of all claims and demands as of that date, but a termination of any further rights that the secured creditor might have in and to and against said real estate up to that time. Nor can I agree with counsel that these payments for rents, both to the state receiver and to the receiver in this proceeding, were payments on the principal referred to in Subsection, sub. s(3), as the quotation "less the amount paid on principal" undoubtedly refers to the additional amount which may have been required by the conciliation commissioner in addition to the rental to be paid on the principal as provided in Subsection, sub. s (2). Payments of annual rentals were not payments on principal but were to be applied on the indebtedness and might well have been applied on the interest instead of on the principal by the secured creditor as the annual interest indebtedness was greater than the amount of the rentals paid. See Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244.

But we need to look no further than the Act itself to determine how distribution of these sums in the hands of the receiver should be made. Subsection s(2) says that such rentals shall be paid into court to be used for payment of taxes and upkeep of the property and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear.

By agreement of the parties made in open court at this hearing copies of the original mortgage and of the petition of foreclosure filed in the State court were submitted for the purpose of permitting the court to determine, without sending the cause back to the commissioner, whether that mortgage and action in starting the foreclosure created a lien upon the rents and profits. The mortgage clearly does so provide and at the commencement of the proceedings in the State court the secured creditor here applied for and there

was appointed a receiver by the State court for the purpose of conserving these rents and profits to be later applied on the mortgage. The Supreme Court of Iowa has repeatedly held that the right of a mortgagee of real estate under a mortgage pledging rents and income as security is valid. First Trust Joint Stock Land Bank v. Jansen, 217 Iowa 439, 251 N.W. 711; Equitable Life Ins. Co. v. Brown, 220 Iowa 585, 262 N.W. 124; Bankers Life Co. v. Garlock, 227 Iowa 1335, 291 N.W. 536.

The mortgage provides as a part of the security a lien on the rents and profits and the secured creditor applied for the receiver at the commencement of the action in the State court in 1934. Clearly therefore the secured creditor has a lien upon the rents and profits that were collected and in the hands of the State receiver in the State court at the time this proceeding was instituted and is entitled to the net balance which is paid over by the receiver in the State court to the receiver here in the sum of $1,387.68. And I can see no reason why the pledge thus established would not continue upon the rents and profits after the institution of the proceeding in this court. First Savings Bank & Trust Co. v. Stuppi, 8 Cir., 2 F.2d 822, 827. The result must be that all of the money in the hands of the receiver in this court collected as rents and profits from the bankrupt, as well as those still due from him, is charged with a lien and is a security for the mortgaged debt.

This lien however must be subject to the provisions of Section 75, sub. s(2) with reference to payment of taxes and upkeep of the property. Wright v. Vinton Branch, 300 U.S. 440, 468, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455.

It is unnecessary to determine what would be the rule if these were unpledged assets as between the secured and unsecured creditors, as there are only two creditors here: first, the secured creditor, and the other, the United States, which is entitled to a priority on the distribution of the general assets of the estate. Certainly the phrase that distribution should be made among the secured and unsecured creditors as their interests may appear requires the payment of any security or proceeds therefrom to the secured creditor.

It follows that all of the rents and profits, subject to the payment of the taxes and upkeep of the property under order of the court, belongs to the secured creditor and not to the bankrupt.

The secured creditor complains of the order of the commissioner authorizing payment of costs. The only costs that appear from the report of the receiver is as to the $200 for his own services and as his appointment was requested by the bank it would seem that they should not complain about this payment being made. First Savings Bank & Trust Co. v. Stuppi, supra, 2 F.2d p. 828.

I therefore find that the $200 is a proper charge against the funds derived from the rents and profits. However, the commissioner did make an order directing generally payment of any charges for upkeep on the property. This should be limited to those charges for upkeep which have been passed upon and authorized by the commissioner. Adair v. Bank of America, 303 U.S. 350, 358, 58 S.Ct. 594, 82 L. Ed. 884. The court cannot make a blanket order directing the payment of reasonable upkeep, and it could probably not pay out of the rentals the fees of the conciliation commissioner and the appraisers since they are not "upkeep" of the property. Federal Land Bank of New Orleans v. Searcy, 5 Cir., 109 F.2d 418. However, it would appear from the report of the receiver that there were some amounts coming into his hands from other sources than rentals and these funds should be used for the purpose of paying these fees and costs.

The claim of the Farm Credit Administration will also have to be subservient to the lien of the secured creditor on the crops and the payment of the costs and expenses of administration and it is entitled only to such a sum as may be remaining from the general assets, that is, any receipts coming into the hands of the commissioner or his receiver other than rents and profits. The United States does not have or claim to have any security for its indebtedness, but under the statutes of the United States above referred to, § 104, Title 11, and § 191, Title 31, U.S.C.A. it does have a priority of payment, but this priority of payment in the distribution must be subsequent to the rights of the secured creditors in and to the property for distribution. This has been distinctly held by the Circuit Court of Appeals of this Circuit in the case of United States v. Guaranty Trust Company, 8 Cir., 33 F.2d 533, 537, wherein it was said:

"This court has always held that a mortgage of real estate, made in good faith by a debtor to secure a private debt, is a conveyance of such an interest in the land, as will defeat the priority given to the United States by Act of Congress in the distribution of the debtor's estate."

The bankrupt has not paid the rentals as provided by the order of the conciliation commissioner for the year 1939. Before he can have an order transferring to him the real estate upon his depositing with the commissioner the $15,000 appraised value, he will have to comply with the orders of the court and pay the rentals due for the year 1939. The period fixed by the commissioner in his order of August 4, 1941, of September 7, 1941, is therefore extended for a period of 30 days, or until Oct. 7, 1941.

From the foregoing it is apparent that all of the orders upon which reviews are asked should be set aside and remanded to the Commissioner for further proceedings in keeping with this opinion.

The attorney for the secured creditor may prepare an order in conformity with the foregoing decision. To all of which the bankrupt excepts.