## WILSON v. DEWEY et al.
### No. 12460.

Circuit Court of Appeals, Eighth Circuit.

March 4, 1943.

A. D. Sappington, of Columbia, Mo. (Rubey M. Hulen, of Columbia, Mo., on the brief), for appellant.

Marion R. Garstang, of Linn, Mo. (J. H. Mosby, of Linn, Mo., on the brief), for appellee, Joseph Plassmeyer, Secured Creditor.

J. R. Baker, of Fulton, Mo. (Frank P. Baker, of Fulton, Mo., on the brief), for appellee, Charles Edward Dewey, Debtor.

Before GARDNER, RIDDICK and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order in bankruptcy which distributed $16,500, paid into court as the re-appraisal value of a farm which was being administered under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. The order appealed from distributed $11,507.69 of the fund to the owner of the first mortgage on the farm, $2,603.29 to the owner of the second mortgage, and $2,389.02 to the debtor. James E. Wilson, the owner of the first mortgage, prosecutes this appeal.

The debtor purchased the farm involved from appellant James E. Wilson for the sum of $15,000, paying Wilson $3,000 in cash and executing to him three notes totaling $12,000 for the balance of the purchase price. The notes were all dated September 30, 1935, one being for $1,000 due one year after date, another for $1,000 due two years after date, and the third for $10,000 due five years after date. The notes all bore compound interest at the rate of 6% per annum, payable annually, and were secured by a first mortgage in the form of a trust deed upon the farm purchased. The $3,000 in cash which the debtor paid to Wilson was borrowed from appellee Plassmeyer, for which the debtor gave Plassmeyer a note in the amount of $3,000 bearing interest at 6%, secured by a second mortgage in the form of a trust deed on the same farm. In June, 1938, the debtor had paid only the interest payments on the Wilson notes due September 30, 1936, and had defaulted in the payment of the two $1,000 notes held by Wilson. Wilson began foreclosure proceedings and on July 12, 1938, the debtor filed his petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and secured an order enjoining the foreclosure sale. The case was referred to the Conciliation Commissioner but the debtor and the mortgagees were unable to agree upon any proposal of composition and extension, and on February 16, 1939, the Commissioner requested an order closing the case, which on February 20, 1939, was duly entered.

On April 4, 1939, the debtor filed his petition requesting that he be adjudged a bankrupt under the provisions of Section 75, sub. s of the Bankruptcy Act, and on the following day the debtor was so adjudged and the matter was referred to a Referee in Bankruptcy. The farm was appraised at $15,000 and the court approved a rental payment by the debtor of $1,000

per year during the three years stay. The debtor accordingly retained possession of the farm and made the rental payments of $1,000 per year for three years and until April, 1942. At the expiration of the three years stay the debtor, having failed to request a re-appraisal and not having offered to pay the appraised value of the farm into court, Wilson, the first mortgagee, filed a petition requesting that the farm be sold at a public sale. Thereafter the debtor filed a petition requesting the court to set aside its order for public sale and permit him to pay into court the appraised value of the farm in the amount of $15,000. The second mortgagee opposed this motion and at the hearing the debtor withdrew his petition and made request for re-appraisal of the farm and the court thereupon entered an order setting aside the previous order for a public sale and ordered a re-appraisal of the farm. On hearing the farm was re-appraised at a value of $16,500 and the debtor was granted until August 5, 1942, in which to pay that sum into court. On August 1, 1942, the debtor paid this re-appraised value of the farm, $16,500, into court. The court thereupon entered an order vesting title in the debtor free and clear of encumbrances, and ordered a hearing on the claims of all parties for distribution of the $16,500 paid into court by the debtor. The debtor filed a petition asking that out of the $16,500 there be refunded to him the sum of $3,229.06 which was the amount paid by the Referee on back taxes and the amount paid to the first mortgagee out of the rents received by the Referee. Wilson, the first mortgagee, filed a motion requesting that out of the $16,500 the sum of $14,310.94, the amount of principal and accrued interest on his notes, be paid to him. Plassmeyer, the second mortgagee, resisted the debtor's petition. The court held that the first mortgagee was not entitled to any interest on his notes after April 5, 1939, the date of adjudication in bankruptcy, and held that the debtor was entitled to deduct from the appraised value certain sums paid by him as rent but which were in excess of the current taxes and upkeep and had been turned over to Wilson, the first mortgagee.

The debtor in his brief says: "The sole question in this case, so far as the appellee Dewey is concerned, is whether or not at the conclusion of the three-year period provided for in the Bankruptcy Act, in order to obtain his farm free and discharged of liens, he was required to pay the full reappraised value of $16,500.00, or whether in computing the amount he should pay into court he should be credited with the sums theretofore paid to the secured creditor Wilson." He disclaims any interest in any disputes there may be between the two secured creditors as to the disposition of the balance of the funds.

Appellant Wilson contends that he was entitled to interest accruing on his notes during the three years bankruptcy period because the $16,500 was more than ample to pay in full principal and accrued interest and the $16,500 paid into court represented the value of the mortgaged property which under Section 75, sub. s of the Bankruptcy Act remains subject to the mortgage.

Plassmeyer, the second mortgagee, contends that the $2,389.02 paid by the debtor as part of the rent and subsequently paid by the Conciliation Commissioner to Wilson, the first mortgagee, was not a payment on principal within the meaning of Section 75, sub. s of the Bankruptcy Act, and should not have been deducted from the appraised value of the land nor refunded to the debtor.

Section 75, sub. s in providing that the debtor may continue in possession of his farm during the three year bankruptcy period provides that the possession "shall remain in the debtor, as herein provided for, subject to all existing mortgages, liens, pledges, or encumbrances. All such existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such mortgages, liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors, as their interests may appear".

■ The priorities and liens of secured creditors remain undisturbed during the three-year bankruptcy period. It was not the purpose of the Act to deprive creditors of their security nor to give it to the debtors, but to give the debtor an equitable opportunity to liquidate his indebtedness provided always that the essential security of the creditor be preserved. Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; John Hancock Mutual Life Insurance Company v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176; Borchard v. California Bank, 310 U.S. 311, 317, 60 S.Ct. 957, 84 L.Ed. 1222; Wright

v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184; Dallas Joint Stock Land Bank v. Davis, 5 Cir., 83 F.2d 322.

It was the view of the trial court that the first mortgagee could lawfully claim only the amount due him at the time of the adjudication in bankruptcy. This holding, we think, fails to give full force and effect to the terms of the mortgage during the three year period of bankruptcy, during which the debtor remained in possession of the mortgaged property. Here the mortgaged premises had a value in excess of the amount of the first mortgage, but the first mortgagee was not permitted to recover the amount confessedly due on his mortgage. The rule that no interest accrues on the debts or claims of unsecured creditors after the date of bankruptcy where the bankruptcy estate is insolvent does not apply to the debts or claims of secured creditors. This court has held that interest accrued on secured debts after and during the bankruptcy where the mortgaged property is more than sufficient to pay both the principal of the mortgaged debt and the accrued interest, is payable as part of the secured claim. Thus in Coder v. Arts, 8 Cir., 152 F. 943, 950, 15 L.R.A., N.S., 372, it is said: "But the proceeds of these mortgaged lands appear to be ample to pay the principal and interest of the debt to the mortgagee Arts and where a trustee sells mortgaged property of the bankrupt's estate free of the mortgage, and the proceeds of the sale are sufficient for that purpose, the mortgagee is entitled to payment of the interest upon his mortgage debt as well as the principal, out of the proceeds in accordance with the terms of the note and mortgage".

In Merchants' Transfer & Storage Co. v. Rafferty, 2 Cir., 48 F.2d 540, 542, in answer to the suggestion that the trial court in that case had disallowed interest on a secured claim upon the authority of Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244, it is said: "It had nothing to do with the right of a creditor holding securities to have interest as well as principal paid out of the collateral, but related only to the amount for which a secured claim might be proved in bankruptcy. * * * It was never suggested that he could not pay interest accruing up to the very date of payment out of the proceeds of the collateral if he might thus satisfy his entire claim. That he may do this has frequently been held, and any other result would be contrary to section 67 [sub.] d of the Bankruptcy Act (11 U.S.C.A. § 107 [sub.] d), which provides that valid liens given for a present consideration shall not be affected by the act". See, also, San Antonio Loan & Trust Co. v. Booth, 5 Cir., 2 F.2d 590; People's Homestead Ass'n v. Bartlette, 5 Cir., 33 F.2d 561; Mortgage Loan Company v. Livingston, 8 Cir., 45 F.2d 28.

We are of the view that appellant, the first mortgagee, was entitled to the payment not only of the principal of his mortgage debt, but also of the interest accruing thereon in accordance with its terms up to the time of the redemption of the mortgaged property.

As has been observed the rental to be paid by the debtor was fixed by the court at $1000 per annum. Out of the rental paid by him the Conciliation Commissioner paid the taxes and upkeep and turned over the balance of $2,389.02 to the holder of the first mortgage to be applied on his claim. At the end of the three-year period the land was re-appraised, at $16,500, which was the sum the debtor paid into court. The court ordered the sum of $2,389.02 be refunded to the debtor on the theory that it was a payment on the principal and as such should be deducted from the re-appraised value. But this was paid by the debtor as rental for the use and occupancy of the property, not as a payment on principal. In fact the debtor made no direction whatever with reference to the application of the fund other than that it should be received in payment of the rental. The Act contains provision that the bankruptcy court "may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors". The court here made no such requirement but the debtor paid only the rental which the statute provides shall be "the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property". The debtor occupied the premises and, hence, received full value for the rental paid. If this $2,389.02 is refunded to him, however, he will not have paid the rental required for the occupancy and use of the premises during the three years in question. This question was considered by Judge Dewey In re Rider, D.C., 40 F.

966

Supp. 882, 885. In the course of his opinion Judge Dewey said: "Nor can I agree with counsel that these payments for rents, both to the state receiver and to the receiver in this proceeding, were payments on the principal referred to in Subsection, sub. s(3), as the quotation 'less the amount paid on principal' undoubtedly refers to the additional amount which may have been required by the conciliation commissioner in addition to the rental to be paid on the principal as provided in Subsection, sub. s(2). Payments of annual rentals were not payments on principal but were to be applied on the indebtedness and might well have been applied on the interest instead of on the principal by the secured creditor as the annual interest indebtedness was greater than the amount of the rentals paid. See Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244.

"But we need to look no further than the Act itself to determine how distribution of these sums in the hands of the receiver should be made. Subsection s(2) says that such rentals shall be paid into court to be used for payment of taxes and upkeep of the property and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear."

We are in accord with this construction of the Act.

The order appealed from is, therefore, reversed and the cause remanded to the lower court with directions to enter judgment in accordance with this opinion.