**STATE OF NORTH DAKOTA v. SZARKOWSKI.**

No. 12436.

Circuit Court of Appeals, Eighth Circuit.

March 15, 1943.

C. E. Brace, Asst. Atty. Gen. (Alvin C. Strutz, Atty. Gen., and P. O. Sathre, Asst. Atty. Gen., on the brief), for appellant.

Arthur L. Knauf, of Jamestown, N. D. (John Knauf, of Jamestown, N. D., on the brief), for appellee.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the State of North Dakota to reverse an order affirming an order of the Conciliation Commissioner which denied the motion of the State of North Dakota to exclude certain land from the bankruptcy proceedings of Raphael J. Szarkowski, a farmer bankrupt under Section 75, sub. s, 11 U.S.C.A. § 203, sub. s. The State, through the State School Land Department, had loaned some thirty-five hundred dollars to the bankrupt's brother Joseph, and had taken from Joseph a mortgage covering the land in question (and other land) as security and because of default in interest payments was proceeding to foreclose the same at the time of Raphael's bankruptcy. Sale had been made to the mortgagee but a period for redemption remained. Raphael listed the land in his schedules and claimed to be the owner of it subject to the State's mortgage, and on his examination at the meeting of creditors presented a warranty deed executed by his brother Joseph purporting to convey the land to him (the bankrupt). The deed was dated and acknowledged before a notary April 19, 1937, nearly five years before the bankruptcy, and was in due form, though it was not recorded. It appeared that Joseph had obtained his title to the land in question by warranty deed from his father, dated and acknowledged on April 19, 1937, the same day that Joseph conveyed to Raphael. Although Joseph's mortgage to the State School Land Department bore an earlier date of March 19, 1937, it also was recorded April 19, 1937.

It was contended for the State (1) that it could be inferred from the testimony given by the bankrupt Raphael on his examination that the deed given to him by his brother Joseph was not intended to effect a then present transfer of title to the land but that the intention of the parties was that the deed was not to become effective until and unless the mortgage debt was first paid. It was also contended in the alternative (2) that the unrecorded deed was fraudulent and void against the State because its existence "was concealed and undisclosed to the State."

(1) The Conciliation Commissioner, on consideration of the records, files, exhibits and testimony, found "that the bankrupt herein was the actual owner of the lands [in question] under an unrecorded deed delivered to said bankrupt long prior to the filing of original petition and amended petition in these proceedings", and on review by the district court it also found "that the bankrupt is the owner of the land in question by virtue of the unrecorded deed from Joseph, subject of course to the mortgage held by the State of North Dakota."

We do not conclude that such finding was "clearly erroneous." Federal Rules of Civil Procedure, rule 52, 28 U.S.C. A. following section 723c. On the contrary, it is in accord with the evidence. The testimony of the bankrupt relied on by the State was given at his examination by creditors before the State had formulated a specific issue by its motion to strike the lands from the schedules. But the bankrupt's testimony made it clear that he claimed to own the land which he had included under oath in his schedules, and that the written agreement by which his right was evidenced and on which he based his claim was the deed from his brother Joseph. He farmed the land together with his father and despite discouragement by drought and crop failures, hoped to save it. Though he had paid no cash consideration, he applied his labor. In answer to further questions by the State's counsel, he said: "I didn't pay any actual money, only an agreement that we would try to make it pay and if we did it would be my own in the future if it would go through." And in answer to the question: "You would continue to farm it and if you could make the farming pay that that particular land would be yours?", he said, "It would be mine then." These answers were obviously related to the incumbrance of the mortgage and suggest no contradiction of the claim of ownership subject to the mortgage. It is not an unfair inference that the witness distinguished in his own mind between ownership subject to the mortgage and ownership free from it. None of his statements implied that he ever recognized any retention of ownership by his brother Joseph, the grantor in the deed. The findings must be sustained.

(2) Neither can the bankrupt's right to bankruptcy administration of the land be defeated because of the failure to record the deed to him. The validity of the State's mortgage was fully recognized by the parties and is unquestioned, and the brother Joseph who borrowed the money and gave the valid mortgage to secure the loan had the right to transfer his remaining equity in the land to his brother. The effect on farmer-bankruptcy proceedings of the failure to record such a transfer was fully considered by this court in Collins v. Federal Land Bank of St. Paul, 119 F.2d 228, 230. We there observed that the status of a holder of a mortgage situated as is the State in this case, "was in no way prejudiced by the unrecorded deed. Its foreclosure proceedings were not affected by the fact that the instrument was not recorded", and it was decided that the motion there made by the mortgagee to strike from the farmer-bankrupt's schedule of assets the mortgaged real estate claimed by him under an unrecorded deed could not be sustained. We think that the situation here is not to be distinguished.

The order appealed from is affirmed.