## STATE OF NORTH DAKOTA v. SZARKOWSKI.

### No. 12733.

Circuit Court of Appeals, Eighth Circuit.

April 19, 1944.

334

C. E. Brace, Asst. Atty. Gen. (Alvin C. Strutz, Atty. Gen., and P. O. Sathre, Asst. Atty. Gen., on the brief), for appellant.

Arthur L. Knauf, of Jamestown, N. D. (John Knauf, of Jamestown, N. D., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This bankruptcy matter has been before us on other issues. State of North Dakota v. Szarkowski, 8 Cir., 134 F.2d 201. The real property involved consists of a half section of North Dakota farm land thus described: West Half of the East Half and the Southwest Quarter of Section Twelve (12), in Township One Hundred Forty-one (141), North of Range Sixty-three (63), Stutsman County, North Dakota. This property, by report of appraisers, filed February 17, 1942 and approved March 5, 1942, had been appraised at a value of $720. February 12, 1942, Szarkowski was duly adjudicated a bankrupt under subsection s of Section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203, sub. s, and April 21, 1943, filed his petition for redemption of said real property, and paid into court its said appraised value of $720.

To this petition the State of North Dakota filed objection April 29, 1943, alleging that it was then the owner of said land by virtue of a purchase at foreclosure sale January 21, 1941, under its mortgage for the sum of $3,863.20; that the court was without power, under the provisions of Section 75 of the Bankruptcy Act, to compel it to accept a redemption, or to re-sell

said lands for any amount less than the amount of said purchase at the foreclosure sale; that the fair and reasonable market value of said real estate is greatly in excess of said appraised value in any event; and requesting that said property be reappraised pursuant to the provisions of Section 75, or, in the alternative, that the court set a date for a hearing for the purpose of fixing the value of the property in accordance with the evidence submitted, and that the bankrupt be required to effect a redemption or purchase of said lands by paying to the state the said sum of $3,-863.20, with interest, whether or not said sum be more or less than the value as so fixed by the court.

The matter came on for this hearing May 13, 1943, before the Conciliation Commissioner acting as referee. Witnesses were heard on both sides. The referee fixed the present fair and reasonable market value of the land at $1,300, and ordered that $297.79, (as 1942 rental) be applied as part of the redemption value. Also that the sum of $411.23 be paid to Stutsman County in full payment for taxes for the years 1937 to 1942, inclusive. August 5, 1943, the District Court affirmed that part of the order fixing the value of the property, and directing the payment of taxes; but reversed the part of the order applying the 1942 rental as part of the redemption value. From the decree fixing the value at $1,300, and directing said payment of taxes, the State of North Dakota has appealed.

Appellant's statement of points of alleged error to be argued are the following:

"1. The District Court erred in affirming that part of the order of the Conciliation Commissioner, fixing the fair market value of the land involved at $1,300, dated May 18th, 1943.

"2. The District Court erred in affirming that part of the order of the Conciliation Commissioner which allowed the bankrupt to redeem from the sheriff's certificate of foreclosure sale of the land involved from the appellant, since the mortgage foreclosed was given as security for a loan of permanent school funds of the State of North Dakota, and the land sold on foreclosure on issuance of sheriff's deed becomes a part of such permanent school funds.

"3. The Court erred in affirming that part of the order of the Conciliation Com-

missioner which provided for payment of taxes out of redemption money".

 In these circumstances the ascertainment of the value of this land for the purposes of final redemption under the provisions of this Bankruptcy Act must be regarded as subject to the rules of procedure generally recognized and provided; that is, the value to be ascertained, as in formal appraisal, must be, as nearly as possible, the "then fair and reasonable market value." In a very recent case, Huber v. Moran, 8 Cir., 140 F.2d 823, 824, this court, speaking through Judge Stone, has restated its conception of the established legal meaning of the market value of land not having an established current open market. It is "the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy", citing Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 78 L.Ed. 1236; De Laval Steam Turbine Co. v. United States, 284 U.S. 61, 72, 52 S.Ct. 78, 76 L. Ed. 168; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569, 574; Olson v. United States, 8 Cir., 67 F.2d 24, 29, 30; North American Tel. Co. v. Northern Pacific R. Co., 8 Cir., 254 F. 417, 418. In Olson v. United States, supra [292 U.S. 246, 54 S.Ct. 709, 78 L.Ed. 1236], it is stated that in making such estimate "there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." In Huber v. Moran, supra, it is pointed out that this court has applied this rule of determination of "market value" in a number of cited cases.

At the hearing to determine the then reasonable and fair market value of the real estate under the provisions of Section 75, sub. s(3) of the Bankruptcy Act, pursuant to the request of appellant for reappraisal, the appellant, State of North Dakota, offered the testimony of the following witnesses:

George Whitney, County Auditor, who testified that the assessed valuation for the years 1941 and 1942 was $3,405, as shown by the record.

William M. Bennett, Deputy Sheriff, who was held upon examination as not qualified to testify to land values in that community, but who was permitted to put in an exhibit under offer of proof. This exhibit fixes the value at $4,150.

E. E. Swanston, State Land Commissioner, who fixed the value at $4,496. N. P. Jensen, Deputy Land Commissioner, who fixed the value at $4,150, and J. A. Kohler, Field Man for the Land Department, who fixed the value at $4,109.

The appellant also introduced an exhibit showing the application for this loan of $3,000, November 27, 1936, with the valuation stated by the debtor of $8,150 on the land and $300 on improvements. The debtor offered the testimony of three witnesses besides himself. They were all farmers, living in the vicinity and familiar with the character of the soil, its productivity, the improvements upon the property, its desirability, and in general the considerations that are uniformly given weight in bargaining between owner and purchaser. The witnesses for appellant pursued the same course of examination, but showed rather less familiarity with these specific local conditions. The average value fixed by appellant's witnesses was $4,225; that by debtor's witnesses was approximately $900. Thus, it will be seen, that a wide disparity existed between the valuations placed by the witnesses for the opposing sides.

The referee, who presided at this hearing, against whom no charge of unfairness or bias is made, is shown by the record to have made every effort to elicit a fair and reasonable determination of value based upon competent evidence under the applicable law. In his report of the hearing he says:

"I have given careful consideration to all the evidence adduced and introduced by both parties, and have considered the credibility of the various witnesses, the weight of all the evidence and testimony, and the apparent judgment, interests and prejudices of all the witnesses, with full appreciation of the great diversity in opinion and testimony as to value, and after carefully evaluating all aspects of the evidence and testimony, including the familiarity and actual knowledge of all the witnesses with respect to land values and sales in the general neighborhood of Bankrupt's land, and I now find that the present fair and reasonable market value of the Raphael Jerome Szarkowski farm heretofore described, is in the sum of One Thousand Three Hundred Dollars ($1300.-00)."

Counsel for appellant in their brief claim that it is evident that the Conciliation Commissioner gave no consideration to the testimony of the witnesses for the state, but rather to that of recent sales in the immediate vicinity, which, being for lands recovered by mortgage foreclosure and tax sales, they assert furnished no criterion of actual value. The Conciliation Commissioner had a rather difficult task in attempting to reconcile such widely divergent values as those fixed by the witnesses for the opposing parties; but we do not think his efforts were subject to the criticism which the state seeks to import from the language of this court in Kauk v. Anderson, 8 Cir., 137 F.2d 331. On the contrary in that case we said (137 F.2d loc. cit. 333):

"His findings of fact must be accepted upon review unless clearly erroneous. They are clearly erroneous if they are based upon a substantial error in the proceedings or upon a misapplication of the controlling law, or if they are unsupported by any substantial evidence, or if they are contrary to the clear weight of all the evidence". (Citing Dunsdon v. Federal Land Bank of St. Paul, 8 Cir., 137 F.2d 84.)

It is to be recalled that the State of North Dakota, acting in its sovereign capacity, in its objection to debtor's offer of redemption of this property, and acting as trustee of the permanent school funds, created by the land grants made to it by the Enabling Act of February 22, 1889, 25 Stat. 676, asserted that, by virtue of the trustee's sale under its mortgage, it is now the owner of said lands subject only to a right of redemption; and that, because of the provisions of state law in that behalf, and because said lands constitute a part of the permanent school funds granted to the state by said Enabling Act, the court is wholly without power, under the provisions of Section 75 of the Bankruptcy Act, to compel said State of North Dakota in its sovereign capacity to accept a redemption of said lands for any amount less than the amount so required from said sheriff's foreclosure sale, towit, the sum of $3,863.20.

The witnesses for appellant were all officials holding office directly under the state or one of its subdivisions. Three of the four were directly connected with its Land Department, and all of them must be conceived to have been familiar with the attitude of the state, and its contentions respecting the amounts it should re-

ceive as a condition of redemption by the debtor, and to have been in sympathy therewith. These contentions directly attacked the power of the court to compel the state to accept this so-called redemption value under the provisions of Section 75 of the Bankruptcy Act, except in accordance with the terms, and upon the grounds urged by the state in its objection filed.

The record shows that the debtor has properly invoked the remedial powers of Section 75 of the Bankruptcy Act to effect his rehabilitation as a farmer-mortgagor. The Constitution, article 1, § 8, cls. 4, 18, provides that Congress shall have power to establish uniform laws on the subject of bankruptcies throughout the United States, and to make all laws which sh:.,l be necessary and proper for carrying into execution these powers.

■■ Without unnecessary elaboration we think the Supreme Court has answered these claims of appellant most decisively, and that because of the importance of the issue sought to be drawn between state and national powers, it is thought those answers should most effectively be expressed in the language employed by the decisions cited.

"The Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress." Wright v. Union Central Ins. Co., 311 U.S. 273, 279, 61 S.Ct. 196, 200, 85 L.Ed. 184.

"The right of the Congress to legislate on the subject of bankruptcies is granted by the Constitution in general terms." Wright v. Union Central Ins. Co., 304 U.S. 502, 513, 58 S.Ct. 1025, 1032, 82 L.Ed. 1490.

"The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies." Id., 304 U.S. loc. cit. 516, 58 S.Ct. loc. cit. 1033, 82 L.Ed. 1490.

"Until that right of redemption expires the rights of the purchaser are subject to the power of the Congress over the relationship of debtor and creditor and its power to legislate for the rehabilitation of the debtor." Id., 304 U.S. loc. cit. 514, 58 S.Ct. loc. cit. 1032, 82 L.Ed. 1490.

"Bankruptcy proceedings constantly modify and affect the property rights established by state law." Id., 304 U.S. loc. cit. 517, 58 S.Ct. loc. cit. 1033, 82 L.Ed. 1490.

"Property rights do not gain any absolute inviolability in the bankruptcy court because created and protected by state law. Most property rights are so created and protected. But if Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect these property rights, provided the limitations of the due process clause are observed." Id., 304 U.S. loc. cit. 518, 58 S.Ct. loc. cit. 1034, 82 L.Ed. 1490.

Compare Wright v. Vinton Branch, 300 U.S. 440, 468, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455.

Under the express provision of the Amendatory Act of August 28, 1935, Subsection s of Section 75, 49 Stat. 944, the rental fixed "shall be paid into court to be used for payment of taxes and upkeep of the property and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear." Wilson v. Dewey, 8 Cir., 133 F.2d 962, 966.

■ This court has held that the Bankruptcy Act provision for payment of all taxes owing by the bankrupt to the United States, State, County, District or municipality contemplates no priority as between various taxing districts. State of Missouri v. Ross et al., 8 Cir., 80 F.2d 329, affirmed 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46. We find that the Supreme Court of North Dakota is not in disagreement upon these issues with the federal cases cited. It holds that a real estate mortgage executed to the state to secure a loan made from the permanent school fund does not differ in nature from the ordinary real estate mortgage; that, during the period of the lien and until the land becomes the property of the state, through the issue of a sheriff's deed after foreclosure, the land is still subject to taxation. State v. Divide County, 68 N.D. 708, 283 N.W. 184, 185.

■ All things considered, in view of the consideration given by the referee to the testimony at the hearing, his appreciation of the interests and prejudices of all the witnesses, and the right of the debtor upon his request to be afforded an opportunity to redeem the property at its then reasonable market value as appraised, or as fixed by the court of hearing, if the provisions of this bankruptcy section are to be given practical effect, we think that this finding and order of the referee, as

confirmed by the District Court, should be approved.

 It is the duty of the District Judge to accept such findings of value based upon a hearing, unless the judge is soundly convinced from the proceedings before him that the finding is clearly erroneous, Dunsdon v. Federal Land Bank of St. Paul, 8 Cir., 137 F.2d 84, and such findings of fact must be accepted upon review unless clearly erroneous. Kauk v. Anderson, 8 Cir., 137 F.2d 331, 333.

For the reasons herein stated, the order and decree of the District Court is affirmed.