## ROACH v. JOHNSON.
### No. 341.

District Court, N. D. Indiana,
South Bend Division.

Feb. 25, 1943.

Judgment Vacated by Supreme Court
May 24, 1943.

John W. Montgomery, of South Bend, Ind., for plaintiff.

Francis Biddle, Atty. Gen., Alexander M. Campbell, U. S. Atty., of Fort Wayne, Ind., Luther M. Swygert and James E. Keating, Asst. U. S. Attys., both of South Bend, Ind., and Otto T. Englehart, Sp. Asst. to Atty. Gen., for intervenor.

Arnold, Degnan, Dohnalek & Goheen and Walter R. Arnold, all of South Bend, Ind., for defendant.

SLICK, District Judge.

Plaintiff brings this suit against defendant asking for judgment in treble the amount he has been required by defendant to pay on a lease of property in the City of South Bend, Indiana, in excess of that permitted under an order issued by the Administrator of the Emergency Price Control Act. He alleges that both he and the defendant are residents of the City of South Bend, and invokes the jurisdiction of this court under Section 205 of the Emergency Price Control Act enacted by Congress and approved January 30, 1942, 50 U.S.C.A. Appendix § 925. Plaintiff alleges that he is a tenant of the defendant under a written lease providing for the payment of rent in the sum of Forty-Five ($45) Dollars per month; that in March, 1942, the Administrator of the Emergency Price Control Act created and proclaimed as a Defense Rental Area the territory embodying the County of St. Joseph, including South Bend, to become effective June 1, 1942. That the pertinent provisions of the regulation as created by the Administrator of the Emergency Price Control Act are that regardless of any contract or lease no person shall demand or receive rent within the Defense Rental Area higher than the maximum rent provided by the regulation; that disregarding such regulation the defendant, his landlord, has exacted Ten ($10) Dollars per month more than the regulation permits and plaintiff has been required to pay Forty-Five ($45) Dollars per month when under said

regulation the maximum he could be required to pay is Thirty-Five ($35) Dollars per month. He brings this suit for treble damages amounting in all to One Hundred Twenty ($120) Dollars, in addition to Fifty ($50) Dollars attorneys' fees.

Defendant challenges the specifications of this complaint with a motion to dismiss accompanied by a very exhaustive brief in support of such motion.

We have not been favored with a brief on behalf of the plaintiff. Intervenor, the Price Administrator, filed an answering brief which has been answered by way of reply by the defendant who specifically affirms that the Congress, under its War Powers, has authority to regulate prices limited only by the constitutional inhibition against failure to provide standards. Defendant, as I understand his brief, contends that the Administrator cannot use his own discretion without a hearing to arbitrarily fix prices in any Rental Area; that there must be some standards to guide him, which the Act fails to provide. Otherwise the delegation of authority is contrary to the Constitutional provisions.

▮ I realize the seriousness of the question and the necessity of delegating authority to stabilize prices in these troublous times, nevertheless, the Constitution is intended to be enforced and complied with in times of war as well as in times of peace. This principle has been particularly accented and runs through all the decisions handed down by the Supreme Court—United States v. L. Cohen Grocery Company, 255 U.S. 81, 41 S.Ct. 298, 65 L. Ed. 516, 14 A.L.R. 1045; Ex parte Milligan, 4 Wall. 2, 121, 18 L.Ed. 281, and many other illuminating decisions.

In Panama Refining Company v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 252, 79 L.Ed. 446, the Court said "Congress has declared no policy, has established no standard, has laid down no rule," thus inferentially requiring that a policy and standards must be set up to give the Act of Congress constitutionality. The order in this case, as in the Panama case, contains no finding of facts, no statement of the grounds of the Administrator's action. Again in the case at bar, as was held in the Panama case, if it could be inferred that Congress intended certain circumstances or conditions to govern the exercise of the authority conferred, the Administrator could not act validly without complying with the circumstances and conditions and findings by the Administrator that these conditions existed and were necessary, else it is left entirely to the unfettered discretion of the Administrator.

▮ As was said by Chief Justice Hughes in the Panama case, supra: "We are concerned with the question of the delegation of legislative power. If the citizen is to be punished for the crime of violating a legislative order of an executive officer, or of a board or commission, due process of law requires that it shall appear that the order is within the authority of the officer, board, or commission, and, if that authority depends on determinations of fact, those determinations must be shown." No determinations of facts are shown in the case at bar. The only provision in the Emergency Price Control Act that even hints at the necessity for determination of fact is found in Section 202, 50 U.S.C.A. Appendix § 922, where it is provided that: "The Administrator is authorized to make such studies and investigations and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this Act, or in the administration and enforcement of this Act and regulations, orders, and price schedules thereunder." Here the Administrator is authorized, but not required, to act. In Wichita R. & Light Co. v. Public Utilities, etc., 260 U.S. 48, 43 S.Ct. 51, 55, 67 L.Ed. 124, the Court said: "In creating such an administrative agency, the Legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function." What course of procedure or rules of decision were laid down or complied with in this case?

As defendant very well says on page 16 of his brief: "He (the Administrator) possesses here not only a figurative 'roving commission', but one in patent literalness. He may move from state to state, from county to county, and, according as 'the spirit moves', or in the measure of his last nocturnal sojourn, whether restful or restless, his morning meal palatable or inedible, find or decline to find, as for that territorial locality where each morning sun discovered him, that it was 'an area where defense activities have resulted or threaten to result in an increase in the rents for housing accommodations which will bring about speculative, unwarranted and abnormal increases in rents which tend to de-

feat or obstruct the effective prosecution of the war.' He (the Administrator) becomes the general agent of the Congress—first to choose the area for legislation, then to choose the character of the legislation that he believes suits the area selected for action, and there to enforce it in the manner he sees fit."

As Mr. Justice Cardozo once said: "Here in effect is a roving commission to inquire into evils and upon discovery correct them." It "is delegation running riot." Schechter Poultry Corp. v. United States, 295 U.S. 495, at pages 551 and 553, 55 S.Ct. 837, at pages 852, 853, 79 L.Ed. 1570, 97 A.L.R. 947. In my opinion Congress never intended to delegate this omnipotent power to the Administrator of the Emergency Price Control Act, and if it was so intended, the Act, under such construction, is unconstitutional.

For the above reasons the motion to dismiss should be sustained.