**BROWN, Administrator, Office of Price Administration, v. O'CONNOR et al.**

No. 828.

District Court, N. D. Texas, Dallas Division.

May 14, 1943.

Clyde O. Eastus, U. S. Atty., John A. Erhard, Asst. U. S. Atty., Talbot Smith, Amos J. Coffman, W. B. Harrell, and W. J. Holt, Regional Litigation Attys., all of Dallas, Tex., and Ralph R. Rash, Regional Litigation Atty., of Sulphur Springs, Tex., for plaintiff.

R. M. Vaughan, James D. O'Connor, and Mildred Douglass, all of Dallas, Tex., for defendant.

ATWELL, District Judge.

The rents enjoyed by the defendants upon 1407 and 1409 Annex Avenue, Dallas,

Texas, apartments 1 and 2 upper, and apartments 1 and 2 lower, were slightly less than $30 per month per apartment, on March 1st, 1942.

Beginning in 1941, defendants realized that the property was old and in dilapidated and bad condition and they began a series of improvements. Those improvements included new roof, new sidings, new flooring, plastering, painting, papering, new furnishings, tile work in three of the apartments, the moving of sinks and the general straightening and strengthening of the structure, resulting in an expenditure of approximately $5,000. The improvement of one of the apartments was finished sometime around November 1, 1942, and the finishing of all the apartments was by the early winter of 1943.

The rentals received for these apartments since such improvements are, respectively $55, $55, $55, and $60 per month.

While these improvements were going on, Inspector Monk, for the Rent Control Bureau, went to the property, entered it and questioned the tenants. While he was there, he came in contact with the defendants, and their son, who is a workman, as well as an attorney. The inspector was asked if he wished to look at the rest of the improvements, and he said, "No, just go ahead with the improvements and when they are finished, let us know and we will come out and make an inspection and adjust," or, words to that effect.

The defendants made no petition to the Administrator as required by the Act, calling for the right to increase the rentals because of improvements.

This suit was filed against them for charging more than the March 1st, 1942, ceiling price, as indicated in Findings 1 and 3.

Since the plaintiff enters the court for an equitable decree, he is bounden by such principles, and the suit being instituted and equity not being shown, the cause may be dismissed without prejudice to the plaintiffs' right to re-enter court after the citizen shall have speedily presented his case to the Administrator for adjustment of rents in accordance with the provisions.

This rental statute is the twin of the price statute to be found with it. Both were intended to prevent abnormal increases in charges, in order to prevent "hardships to persons engaged in business" 56 Stat. 23, 50 U.S.C.A.Appendix, §§ 901–946, said the Congress.

Looking into the assignment of those reasons, which are probably outside of judicial scrutiny, at any rate at the present time, and making that survey in the light of the fact that the nation is at war, and thus understanding the term "defense areas" in the act, we realize that the establishment of these defense areas throughout the United States, where soldiers and sailors are concentrated, and where munition and manufacturing plants are located, and other manufacturing activities for the purpose of carrying on the war, have resulted in a shift in population.

That shift in population would denude some places, and multiply at other places. When that happening occurs, those who had rental property might be able to profit upon the war worker who was thus required to come into a new territory, and it was for the purpose of preventing abuses in that territory, that Congress said it passed this Act.

It, for some reason, though quite familiar with these defense areas, because it created them, delegated to an Administrator under the act, the power to determine whether this Rent Control Act should be applicable to that particular area or not, and in the opinion of some of the judges, it did not set up a controlling machinery for a valid exercise of such administrative power, and, not having done that, they hold that Congress vested in the Administrator legislative functions which may never be done under the Constitution.

That is the criticism that is made here, though it is made briefly and perhaps somewhat summarily.

This act in its entirety has been held constitutional in Brown v. Wick, D.C., 48 F.Supp. 887; Henderson v. Kimmel, D. C., 47 F.Supp. 635; Dieffenbaugh v. Cook, D.C., 47 F.Supp. 645. In United States v. C. Thomas Stores, D.C., 49 F.Supp. 111, the Price Control Act as to prices, not rents, was held constitutional in a criminal case, even though the citizen had not exercised his rights, as allowed him in the act, to challenge the validity of a regulation promulgated under the act before the authority given such power in the act.

To the same effect is the case of United States v. Hark, 49 F.Supp. 95, 96.

The judge adds in that particular opinion, that "It would be a strange situation

to grant that Congress has the power to take men from their homes and to send them to war and [yet] to deny that Congress has the right to prevent profiteering by those supplying food to their dependents."

I do not know that we can thoughtfully approve the reasoning of that case.

In 48 F.Supp. page 236, Henderson, Adm'r, v. Fleckinger, D.C., the right to an injunction against a state court was denied. It was claimed that the state court violated the Rent Control Act. But that case did not relate to any of the questions that are being presented in this case. It merely dealt with the right of the United States Court to stay proceedings in a court of the state where the application to do so was not made under some authority granted to the national court by the Congress. The national court being a court of limited jurisdiction and its hands being tied—very appropriately, I think,—in order to prevent conflict of the courts, with reference to actions in the courts of the state, unless the Congress gives that authority. Reversed, Circuit Court of Appeals, 5 Cir., June 9, 1943, 136 F.2d 381.

■ There are some other cases which it is unnecessary to review, but, that brings us to Roach v. Johnson, D.C., 48 F.Supp. 833. It is there determined, in conformity with many respectable holdings down through the years, that when the Congress creates an administrative agency for the performance of a legislative function, it must, in order to insure its validity, enjoin upon that agency a certain course of procedure and certain rules of decision in the performance of its functions, in order to prevent a delegation of legislative power.

The bench and the bar ought not now, at this late date, question the wisdom and fineness of that requisite. It relates to the very heart of the liberty of the citizen, and whatever our employment may be, or whatever our political preference may be, they should give way to the big question of liberty, because some day it might come home to us.

It is contended in that opinion that the Congress never intended that the Act should give the power to create defense rental areas and fix maximum rentals without hearings or determination of fact. If it had done so, it would be unconstitutional.

Where the Administrator created such an area and fixed maximum rentals without hearings, or determination of facts, the landlord was not liable for treble the amount collected from the tenant in such area in excess of rental permitted by the order.

The court in that particular case found that the Administrator was not required to and did not, in fact, hold hearings to determine in what areas the Act would be applicable. Such creation depended upon the whim of the Administrator. It was "a roving commission", such as was denounced by Mr. Justice Cardoza, and such as was described and criticized in Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and in other cases prior to that.

■ Order 53, which is the order that creates the Dallas area, recites the Administrator held "investigations". He does not use the word "hearings" that I recall. The verity of that order the court is bounden to accept as correct in absence of proof to the contrary.

In Roach v. Johnson, the reported facts so far as I have been able to observe, there is no observation with reference to that, other than that, the Administrator acted without evidence and only upon his own attitude or mental turn at the moment. This may be said to be the fact because the court quotes in his opinion [48 F.Supp. 834] from the brief of the citizen's case to the effect that, "He [the Administrator] may move from state to state, from county to county, and, according as 'the spirit moves,' or, in the measure of his last nocturnal sojourn, whether a restful or restless, his morning meal palatable or inedible, find or decline to find, as for that territorial locality, where each morning's sun discovered him, that it was 'an area where defense activities have resulted or threatened to result in an increase in the rents for housing accommodations which will bring about speculative, unwarranted and abnormal increases in rents which tend to defeat or obstruct the effective prosecution of the war.' He (the Administrator) becomes the general agent of the Congress—first to choose the area for legislation, and then to choose the character of legislation that he believes suits the area selected for action, and then to enforce it in the manner he sees fit."

That is that judge's thought. That does not seem to be the situation here, but of the truth of the situation, the court is not advised.

■ Now to hold an act of the Congress unconstitutional is unquestionably within the power of the citizen's trial court. That right has come down to us before the days of having a Constitution, because that is what the Colonial courts did, and to debate that now places the debater in the attitude of not knowing the history of his own country, and in the light of what the Colonial courts had been doing the writers of the Constitution wrote what they did write, to-wit, that the courts created in the Constitution had legal and equitable powers such as were therein conserved and granted, and within those powers was the right to declare an act of the Congress or the Legislature unconstitutional, and they have continued to do that from that day until this. If the court does not have that power, then the citizen is at the mercy of the Executive or Congress. With that power, the citizen has all three coordinating branches of the government, which we think is the shining jewel of the American system, to wit, legislative, executive and judicial. The court is the citizens' refuge. The court enforces the Bill of Rights.

You will notice that I do not say that I hold the act constitutional or unconstitutional. It is not necessary to a decision of this case. See generally Clem Lockerty Co. v. Charles M. Phillips, 319 U.S. —, 63 S.Ct. 1019, 87 L.Ed. —.

There is, however, a large equity in this case. The citizen's property was in run down condition and bad shape, and his rentals were in accordance with the condition of the property. He began in 1941 to improve his property and by the fall or early winter of 1942, he had largely rehabilitated the building itself and one of the apartments. By the early part of 1943, all of the apartments had been greatly benefited. The gross expenditure for those improvements was about $5,000. It is not an inconsiderable sum, it is a large sum. It is not a made up defense, it is an actual defense.

The ceiling fixed for his property was of March 1st, 1942, when the rentals were very low because of the condition of the property. It would be manifestly inequitable to require the defendant to accept the same rentals now which he received under a totally different fact situation.

The order by the City with reference to the hall and stairway is inconsequential in this calculation. It only amounted to $45 and had nothing to do with the improvement of the apartments. After that improvement was made, the City congratulated the citizen upon his efficiency and promptness. The big question, therefore, is whether this appeal to equity by the Administrator should be heard by the court because of the failure of the citizen to exercise his right to petition under the act for an increased rental under the new situation of his property.

■ Now we have our lawsuit right there. He is given a remedy in the Act. This court has frequently determined for itself, in line with the controlling authorities, that, when the citizen enters court, as the plaintiff, for restraint against an Act, without making use of the Administrative remedy first, that he cannot do so. That is not this case. Cases which deny the citizen that right, in that sort of a case, are not applicable here. Here, the United States comes to the Chancellor. The United States is the plaintiff. It is bounden to make out its case in such a nature as to appeal to the conscience of the Chancellor. If it has not done so, it is not entitled to a decree.

Upon that particular part of the case, the court permitted the defendants to place on testimony tending to elucidate and bear out, if they could, their charge that a government agent had appeared while they were improving this property, and told them to go ahead and when they finished, that the government would consider the improvement and fix the price accordingly; that is their contention.

The government challenges that. It put Mr. Monk on the stand. He was with the Price Control Bureau for awhile, having gone with that activity, I believe, in the fall of 1942, and while he was acting in that capacity, he did go to the O'Connor property. He did proceed to enter that property without a search warrant. He did proceed to seek and secure evidence within that property. He did question the citizen's tenants, without any authority whatever to do so. If he had gone up to the door and rung the bell, as a census taker does, and asked the citizen to come to the door and said he would

like to talk with him a minute or two, that is another situation. But that is not what is done here. The Act does not give the investigator the right to do certain things, but I doubt that a government agent may, without criticism, engage in that activity without also carrying the burden to his government of responding for what he tells that citizen. I watched him when he testified. There was that nervousness of hands and feet that betrays protest to what the lips are saying. I watched Mrs. O'Connor when she testified, and her son, who is one of the lawyers and I also watched her husband, and I have no doubt that Monk told those people to go ahead with those improvements and after thay had finished them, that then the Administrator's office would consider this improved situation and do what was right about it. Now instead of doing that, the citizen saw fit to wait. I don't think the citizens were advised and it is not necessary that they be advised. The government does not have to go out and say, "Look here, you must read this statute, and if you want to come in and file a petition for the adjustment of your rent, the law says you have to do that, and if you don't do it you are in a bad fix." Because the inspector had already told them what would happen. I do not mean to make any rule for other contingencies, or, for unauthorized statements.

They did not read the long order. Even the lawyers did not read it. I doubt whether very many have mastered that order. The court believes the defendants on that situation.

■ So that leaves us where? That leaves us with a suit by the government against the citizen to enjoin that citizen from accepting rents which the renter is willing to pay and the citizen thinks should be paid, for apartments that were refurnished, repainted, replastered, reroofed, refloored, restraightened, and practically made new, just because the citizen did not go down and ask for a readjustment. Mind you the citizen did not bring this lawsuit, and this Act says that the trial court, the United States District Court, shall do what is equitable and right under the circumstances, I have forgotten the exact phrase, but that is what it says, and I don't think it would be "equitable and right" to enjoin the defendants from continuing such

contracts with reference to their property as they and their renters may think appropriate. This right to continue only until they seek, speedily, adjustment with the Administrator.

Therefore, this suit will be dismissed without prejudice to the Administrator's right to rebring it if and when he thinks it appropriate and without prejudice to the defendant's right to make their application to the Administrator for adjustment of the rents, and the temporary restraining order heretofore granted against the citizen collecting his rents is set aside.