**BROWN, Administrator, O. P. A., v. DOUGLASS.**

**No. 873 Civil.**

District Court, N. D. Texas, Dallas Division.

July 17, 1943.

## 878

W. B. Harrell, David B. Love, W. A. Griffis, Jr., and W. J. Holt, all of Dallas, Tex., for plaintiff.

James D. O'Conner, Claud C. Westerfeld, and Mildred M. Douglass, all of Dallas, Tex., for defendant.

ATWELL, District Judge.

The complaint contains eight counts, plus twelve subdivisions of Count 8, and stages the action at 3318 Daniels Street, Dallas, Texas, which is a sixteen-unit apartment, of the value of $60,000. The first seven counts relate to apartments 1, 2, 3, 6, 11, 15 and 16, charging that on the effective date of the Act, the rents charged respectively for those apartments were less than the rates subsequently charged. The subdivisions of Count 8 relate to apartments 2, 4, 6, 7, 8, 9, 11, 12, 13, 14, 15 and 16, and charge a falseness in the amounts claimed to have been charged respectively on March 1, 1942, the allegation being that the registration showed for that date a larger amount charged than was actually charged.

Restraint is asked against charging more than $75 for Apartment 1, more than $65 for Apartment 2, more than $35 for Apartment 3, more than $32.50 for Apartment 6, more than $40 for Apartment 11, more than $57.50 for Apartment 15, and more than $50 for Apartment 16.

Plaintiff pleads the applicable provisions of the law and of the regulations made in pursuance of the law. Such regulations showing the establishment by the plaintiff's predecessor of the Dallas Defense-Rental Area consisting of Dallas County. The plaintiff's pleading is lengthy.

The defendant's answer contains something over forty pages, and is more prolix than the plaintiff's. Neither seems to have considered the admonition of the rules that the statements shall be "concise and brief."

The defendant denies categorically the charges made against her, and then pleads, somewhat summarily, repairs, improvements and rehabilitations to the respective apartments. She also pleads that the Dallas office "plays favors and discriminates between property owners." That this suit "is based on prejudice and malice and is for the purpose of humiliating the defendant." That "the rent control in Dallas is administered without justice, common-sense, or common humanity, or the American doctrine of a square deal; that it is run by men who seek not justice for all, but injustice and inequality." "That instead of their positions being ones of sacred trust and sacred honor, they use their powers as O.P. A. officials to intimidate, humiliate and harass property owners who are courageous enough to stand on their sacred rights as American citizens."

Further, she pleads that the Act is unconstitutional and violates "Article 1 and 2 of the Constitution;" that it is "prohibited by the Fifth and Fourteenth Amendments * * * and denies the right of one to conduct his private affairs honestly and along the customary lines." "And by the reason of threats and criminal prosecution * * * extorts from a property owner, and deprives him of his lawful revenues from his property, by reason of a further cut in rent, regardless of whether said property is rented for enough to take care of the taxes, insurance and upkeep;" and that the arbitrary, capricious and discriminatory manner of its enforcement is unconstitutional." "That no hearing was set and had in regard to the establishment of a ceiling price on rent in this area; * * * that it was done arbitrarily, without foundation, and not based on facts."

The complaint was filed on June 30, 1943. A show cause order was issued, returnable at 10:30 on the morning of July 5th. The parties appeared in open court on that date and asked for a re-setting, agreeing to try the case on its merits upon such re-set date, and it was, accordingly, assigned for Wednesday, July 14th.

On July 12th, the defendant answered, having furnished her answer to the government attorneys a day prior thereto. On July 12th the plaintiff filed a motion to strike certain portions of the answer. A replication to such motions was filed by the defendant on the same date. No effort was made to take up such motions, and on the morning of July 14th, both parties an-

nounced ready on the merits. After the announcement of ready, and after witnesses had been called and sworn in, the plaintiff said there were some motions they would like to present. It seemed inappropriate to hear the motions after an announcement upon the merits, but the court permitted a withdrawal of that announcement and the motions were heard.

While there was an infraction of the rules with reference to prolixity, and, perhaps, as to materiality, the motions were overruled, since the charges made in the answer were of a nature that it appeared they should be given a hearing so far as was appropriate.

With that thought in mind, the thirty odd witnesses who had been sworn, were examined insofar as the parties desired to have them examined.

■ Testimony introduced by the defendant, over the plaintiff's objection, tended to establish the creation of the Dallas area, and the necessity therefor after a rather thorough investigation by the plaintiff and under the plaintiff's direction. I would not like to call that investigation a "hearing," but it is sufficient, I think, to comply, in a general way, with what the Congress ordered done. It certainly is true that in this county there is a large amount of defense work being done and a large influx of workers.

Upon the question of discrimination, testimony clearly evidences an impatience and intolerance on the part of some of the officers for the plaintiff toward the defendant, and, an organization with which she seems to have been alligned, with a like intolerance and impatience upon the part of the defendant toward certain officials who were operating the plaintiff's Dallas Area office. That situation is not only unpleasant and unfortunate, but I have been unable to place my finger upon any particular act of the plaintiff's subordinates against the defendant securing her rights. It is true that her case was selected as one of a few for court action. That it was filed after one of the officials had turned down her application for an increase rental allowance. The inspector who made that inspection, upon that application, seems to have been indiscreet and prejudiced, but no direct evidence has been offered tending to show that his findings were not supported by the regulations made in pursuance of the Act. After he made his report, that report was approved by Rent Director Myers who made

a very poor impression while testifying. The date of the refusal of the prayer for the increase was April 20, 1943, of which the defendant had due notice. The Act and the notice called to her attention the right to appeal from that action, which appeal she did not see fit to take or to pursue. See Henderson v. Kimmel, D.C., 47 F.Supp. 635.

■ The regulations also provide that an increase may be granted the landlord if "the accommodations have been substantially changed * * * by a major capital improvement as distinguished from ordinary repair, replacement and maintenance."

Outside of a rather extensive improvement to the basement, which begun in 1941, before the effective rent date, and was finished in September 1941, the other changes seem to be replacements, repairs and such improvements as the wise and prudent landlord makes for the customary convenience of his tenants and to secure their comfort and the preservation of the property.

The testimony is unsatisfactory as to the time of fixing the basement, to justify it as a basis for any change, as well as to the knowledge concerning its change by the visiting inspector.

■ There seems to be no substantial equity here, as to the facts, which would support a denial of the prayer of the plaintiff, and within its limits, to-wit: the restraint of the defendant against making and continuing to make the charge for Apartment 1; Apartment 2; Apartment 3; Apartment 6; Apartment 11; Apartment 15; and Apartment 16, as detailed in the prayer. See Brown v. O'Connor, D.C., 49 F.Supp. 973.

There is nothing in the cases of Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 33 S.Ct. 9, 57 L.Ed. 107; Gimbel Bros. v. Federal Trade Comm., 2 Cir., 116 F.2d 578; Bunte Bros. v. Federal Trade Comm., 7 Cir., 104 F.2d 996; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Boss, 7 Cir., 107 F.2d 574; Fleming v. Tidewater Optical Co., D.C., 35 F.Supp. 1015; Southern Pac. T. Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; Otis & Co. v. Securities and Exchange Commission, 6 Cir., 106 F.2d 579; National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261,* 58 S.Ct.

571, 82 L.Ed. 831, 115 A.L.R. 307, which treat of avoidance of injunction by good faith, or misunderstanding, or, that the violations have ceased, or, by promise to comply, which makes inapplicable the doctrine somewhat clumsily applied in Brown v. O'Connor, supra.

■ A court of equity cannot be converted into a mere formal functioning entity, which enters decrees upon the pressing of a button. Brown v. O'Connor had its own peculiarly appealing situation. It grew out of an authoritative statement by an inspector that improvements which were then under way—real, substantial, capital improvements—would be taken into consideration when completed. That was not done but suit was filed without the citizen having an opportunity to ask for an appropriate change in his ceiling. There was no attempt to avoid restraint by excuses. It was a genuine, bona fide, equitable reason why restraint should not be granted, and could not be granted in any show of fairness and justice. A chancellor's decree is a matter of grace, and never an absolute right of a litigant.

Briefs were referred to by each side at argument touching the various law questions.

For the plaintiff, such cases as Opp Cotton Mills v. Administrator of Wage and Hour Div., 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; Federal Radio Comm. v. Nelson Bros. Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406; Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Hampton & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; Scripts-Howard Radio, Inc., v. Federal Communications Comm. 316 U.S. 4, 62 S. Ct. 875, 86 L.Ed. 1229; Jacob Ruppert, Inc., v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260; Norman v. Baltimore & O. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321; Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Wright v. Union Central L. Ins. Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490, were cited.

For the defendant, such cases as Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L. Ed. 865, 16 A.L.R. 165; Callan v. Wilson 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223; Hamilton v. Kentucky Distilleries & W. Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; Willson v. McDonnell, 49 App.D.C. 280, 265 F. 432, 435; Campbell v. Holt, 115 U.S. 620, 630, 6 S.Ct. 209, 29 L.Ed. 483; Brewster v. City of Forney, Tex.Com.App., 223 S.W. 175; Home Building Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L. Ed. 413, 88 AL.R. 1481; Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Treigle v. Acme H· Ass'n, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575, 101 A.L.R. 1284; Morgan v. United States, 304 U.S. 1, 58 S. Ct. 999, 82 L.Ed. 1129; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Riverside & D. R. Cotton Mills v. Menefee, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910, were noted.

The citizen is deeply interested in his constitutional rights. That instrument operates in wartime, as well as in peacetime. The agencies that are set up by the Congress and thereafter by the government in accordance with congressional authority, should be high-minded, rights-respecting servants of the people. Neither threats nor discriminations, nor favoritism, should be indulged. Universality, fairness, and justice, are the right of all citizens, and the duty of all law-enforcers toward the citizens.

It should never be forgotten that the citizen of today may be the servant of tomorrow, and that the servant of today may be tomorrow's citizen. The officer is truly the servant and the citizen is truly the master. Impoliteness, brusqueness, disposition to order and direct, increased ego, the wish to cow, or to boss, are all evidences of unfitness to be servants. Gentle firmness, calm decision, invariable conduct, universal fairness, on the part of the servant, as well as upon the part of the citizen, beget, most of the time, similar treatment from those with whom contact is made. The they of today are the we of tomorrow, may not be very good grammar, but it is a short way of describing the American method of government.

So much has been written about this Price Control Act, that it is rather late now to mass the authorities which protect the citizen in his walk, and which afford the right of governmental supervision over certain liberties that have heretofore been very dear to the citizen. It is unnecessary for a judge to inventory those things that have been summarily taken away under the emergency of conflict, and under the authority to order the conduct of such conflict by the Congress and the Commander-in-Chief of the Army and Navy. We have all felt that impingement. It is devoutly hoped that the day may soon again be ours when we shall be glad to proclaim our Americanism because of its freedom, its property rights, and its opportunities for a pursuit of happiness. To that end we all work.

What has been done in this Act cannot be denounced as unconstitutional, it may be criticized as inefficient and bungling, at times. Such inefficiency is one of the fortunes of government. It is one of the harvests of bureaus. It is one of the results of temporary authority.

With a generosity of feeling, wholesome tolerance and careful observance of the citizen's rights, much that is distasteful can be removed and only the necessary left to harass.

An order in accordance with these views may be drawn by the plaintiff and OK'd as to form, saving such exceptions as the defendant may desire.