## WRIGHT *v.* UNION CENTRAL LIFE INSURANCE CO.

Nos. 715 and 716. Argued April 6, 1938.—Decided May 31, 1938.

*Messrs. Samuel E. Cook* and *Wm. Lemke*, with whom *Messrs. Walter L. Clements, Elmer McClain* and *Ray M. Foreman* were on the brief, for appellant.

*Mr. Arthur S. Lytton*, with whom *Messrs. Stanley K. Henshaw* and *Virgil D. Parish* were on the brief, for appellee.

MR. JUSTICE REED delivered the opinion of the Court.

Petition for writs of certiorari to the United States Circuit Court of Appeals for the Seventh Circuit was granted by this Court to review the judgments in two appeals brought to the lower court by petitioner here. *Wright* v. *Union Central Life Ins. Co.*, 91 F. 2d 894. The judgments affirmed two orders of the District Court of the United States for the Northern District of Indiana, entered there in proceedings under § 75 of the Bankruptcy Act instituted by Wright.

The earlier order approved the recommendation of the Conciliation Commissioner to strike certain described real estate from the debtor's schedules, and the later.

order refused to permit the debtor to amend the schedules by showing the circumstances under which the debtor claimed an interest in the same real estate covered by the earlier motion. The correctness of the orders depends largely upon the constitutional validity of certain provisions of § 75 (n) of the Bankruptcy Act, as amended by § 4 of the Act of August 28, 1935. 49 Stat. 942. These provisions, held unconstitutional by the lower court, operate to extend the period of redemption from a foreclosure sale allowed the mortgagor under state law. To decide this important constitutional question, our writs of certiorari were issued. In view of § 1 of the Act of August 24, 1937, c. 754, 28 U. S. C. § 401,[1] enacted subsequent to the decision of the case below, the Court certified to the Attorney General the fact that the constitutionality of an Act of Congress affecting the public interest was drawn in question in this cause. The Attorney General disclaimed intention to intervene.

The controversy as to whether or not the land in question was subject to the administration of the court of bankruptcy had its origin in this plexus of facts. Petitioner James M. Wright on October 1, 1925, together with his wife, executed a mortgage to respondent com-

---

[1] "Whenever the constitutionality of any Act of Congress affecting the public interest is drawn in question in any court of the United States in any suit or proceeding to which the United States, or any agency thereof, or any officer or employee thereof, as such officer or employee, is not a party, the court having jurisdiction of the suit or proceeding shall certify such fact to the Attorney General. In any such case the court shall permit the United States to intervene and become a party for presentation of evidence (if evidence is otherwise receivable in such suit or proceeding) and argument upon the question of the constitutionality of such Act. In any such suit or proceeding the United States shall, subject to the applicable provisions of law, have all the rights of a party and the liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the constitutionality of such Act.

pany on a tract of land in Indiana, containing 80.31 acres, to secure a note of $3,000. At the same time, the same parties executed another mortgage to the respondent on a different tract of land containing 200 acres, also in Indiana, to secure a note of $9,000. In 1931, the first tract was deeded to petitioner's son, and three separate forty-acre parcels from the second tract were deeded to his wife, daughter and son-in-law respectively. The property was conveyed subject to definite portions of the indebtedness but without an assumption of any of the obligation by the grantees.

On January 3, 1934, respondent brought suit to foreclose the smaller mortgage, joining as defendants petitioner and his son. Judgment of foreclosure was entered, June 9, 1934, and on July 12, 1934, the 80.31-acre tract was sold, on the foreclosure sale, to respondent. Respondent received a duly executed sheriff's certificate of sale. Delivery of final deed was delayed in view of the one-year period of redemption allowed to mortgagors by Indiana statute. Ind. Ann. Stat. (Burns, 1933) §§ 2-3909, 2-4001.

Wright filed a petition under § 75 of the Bankruptcy Act, October 29, 1934. In listing his property on his schedules, he set forth all 280.31 acres, despite his previous conveyances of 200.31 acres. On December 19, 1934, stating that no agreement of creditors could be had, he amended his petition under § 75 (s), asking to be adjudged a bankrupt.[2] On April 13, 1935, petitioner's son

---

[2] This fact is stated in respondent's brief. Petitioner's answer to respondent's motion to strike out from the schedules the real estate in controversy alleges "that all the steps under said Section 75 were taken; that later petitioner (Wright) amended his petition under Subsection (s) of Section 75, as amended August 28, 1935." By stipulation the allegations of the answer were admitted as evidence. There is apparently no issue as to the fact of the filing of a petition in bankruptcy on December 19, 1934.

and daughter and their spouses delivered to him a quitclaim deed for all the property, 200.31 acres, he had previously deeded to them and his wife.[3]

On May 27, 1935, respondent obtained a personal judgment against petitioner on the $9,000 note, and a decree of foreclosure of the 200-acre tract, which respondent purchased at the sheriff's sale on July 20, 1935, receiving a certificate of sale. On August 2, 1935, petitioner's one-year period for redeeming from sale the 80.31-acre tract having expired July 12, 1935, respondent surrendered its certificate of sale and received a sheriff's deed to this land.

On October 11, 1935, petitioner amended his petition as authorized by § 75 (s) of the Bankruptcy Act, as amended August 28, 1935, following the invalidation by the decision in *Louisville Bank* v. *Radford*, 295 U. S. 555, of § 75 (s) as originally drafted, and again asked to be adjudged a bankrupt.

On July 20, 1936, the one-year redemption period having expired, respondent received from the sheriff a final deed for the 200-acre tract. On July 29, 1936, respondent filed a motion in the District Court for Northern Indiana, where the proceedings under § 75 (s) were pending, to strike from petitioner's schedules, which had been filed October 29, 1934, these 280.31 acres of land.

On December 14, 1936, the District Court granted this motion, and entered an appropriate order. Apparently the order struck from the schedules eighty acres still owned by Wright in October, 1934, and properly scheduled at that time. Later in December, 1936, petitioner asked leave to amend his schedules, to set forth the reconveyances by his children on April 13, 1935. On December 31, 1936, the District Court denied the application to amend the schedules. Petitioner appealed from

---

[3] Apparently his wife had died in the meanwhile. The record indicates that she died prior to May 27, 1935.

both orders of the District Court, striking the land from the schedules and denying leave to amend. The appeals were consolidated in the Circuit Court of Appeals. As stated in the opening paragraph of this opinion, that court affirmed both orders of the District Court. These judgments are under review here.

A further aspect of the controversy between petitioner and respondent may be noted. On September 13, 1935, prior to the debtor's filing of an amended petition under § 75 (s) as amended, respondent instituted an action in the state court for possession of the 80.31 acres. A judgment overruling a defense grounded on the bankruptcy proceedings, and awarding possession and damages to respondent, was affirmed by the Supreme Court of Indiana on April 2, 1937. *Wright* v. *Union Central Life Ins. Co.*, 212 Ind. 214. A similar judgment with respect to the rest of the land was affirmed October 26, 1937, *Wright* v. *Union Central Life Ins. Co.*, 212 Ind. 563. By temporary restraining order of the Circuit Court of Appeals, and subsequent stay of mandate, respondent has been restrained from taking possession of the land.

*First.* (a). By October 30, 1934, when petitioner sought adjustment and extension of debts under § 75, the 80.31-acre tract had been deeded away to petitioner's son. Accordingly, although this tract was listed on petitioner's schedules, it did not at that time pass into the hands of the bankruptcy court for administration. Nor was the amended petition under § 75 (s), filed on December 19, 1934, any more effective in bringing the tract within the purview of the bankruptcy court. On April 13, 1935, the members of Wright's family relinquished all their right and interest in his lands, including this 80.31-acre tract, so that petitioner then acquired an interest in the land. But Wright's receipt of this gift of land was not effective in and of itself to bring the land within the control of the bankruptcy court. This

is the rule applicable to property received by a bank-rupt subsequent to the filing of an ordinary petition in bankruptcy,[4] and we see no reason why the same rule should not apply to debtor proceedings under § 75.[5]

There is no substance in any contention that this 80.31-acre tract was brought within the purview of the bankruptcy court by the Act of August 28, 1935, amend-ing § 75 (s), or the filing of an amended petition under this section on October 11, 1935. Prior thereto, judg-ment of foreclosure had been entered in the state court and a judicial sale (at which respondent bought in the 80.31-acre tract) held on July 12, 1934. Conveyance and delivery of possession to the purchaser was deferred for one year, the period of redemption under the statutes of Indiana. This period expired on July 12, 1935, and the sheriff's deed was executed on August 2, 1935. With the delivery of the deed, prior to any effective extension of the period of redemption, the purchaser's rights, flow-ing from the judicial sale, were no longer affected by the court's jurisdiction of petitioner and petitioner's

---

[4] *Everett* v. *Judson,* 228 U. S. 474, 478; *Local Loan Co.* v. *Hunt,* 292 U. S. 234, 244; 4 Remington, Bankruptcy, §§ 1377, 1395, 1400; 1 Collier, Bankruptcy, p. 1641.

[5] In considering this 80.31-acre tract we are not concerned with such property acquired subsequent to the filing under § 75 as would be controlled by § 75 (n) as amended by the Act of August 28, 1935. "In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the courts, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's peti-tion, asking to be adjudged a bankrupt, was filed with the clerk of court or left with the conciliation commissioner for the purpose of forwarding same to the clerk of court."

estate under the Bankruptcy Act.[6]  Nothing in § 75 as it now stands indicates any intention that the bankruptcy courts assume control over land not previously within the jurisdiction of a bankruptcy court, and already completely divorced from any title of the debtor.

(b). On October 29, 1934, when Wright filed his original petition under § 75, he was undoubtedly the owner of 80 acres out of the 200-acre tract. He had never conveyed away these 80 acres; no proceedings to foreclose them had been begun. These 80 acres were clearly within the jurisdiction of the bankruptcy court, but we shall not give them separate discussion, for they are controlled *a fortiori* by our ruling with respect to the other 120 acres out of the 200-acre tract.

(c). The status of these 120 acres, deeded in forty-acre parcels, to three members of the family, is governed by other facts. These parcels passed to the other members of the family prior to the filing of the petition for composition on October 29, 1934. Petitioner, however, included them in his schedules. The grantees had title on December 19, 1934, when petitioner filed his first amendment to the petition for composition. On April 13, 1935, these parcels were reconveyed to petitioner; on May 27 judgment for foreclosure was entered and on July 20, 1935, a sale was had. Respondent became the purchaser. The right of redemption expired July 20, 1936. Between the sale and the expiration of the period of redemption, two events occurred. The Congress enacted the Act of August 28, 1935, which added to the Bankruptcy Act, § 75, a new subsection (s) to take the

---

[6] "A sheriff's certificate, however, after the expiration of the year for redemption, invests the holder with an equitable estate in the land, of such high character that it only requires his demand for a deed, to ripen it into an absolute legal title." *Hubble* v. *Berry,* 180 Ind. 513, 519.

place of the subsection (s) held invalid in *Louisville Bank* v. *Radford,* 295 U. S. 555. This new subsection (s) was sustained in *Wright* v. *Vinton Branch,* 300 U. S. 440. Secondly, the petitioner, on October 11, 1935, filed a second amendment to his petition for composition and was "duly adjudged a bankrupt." Both of these events are significant in reasoning out the status of the 120 acres.

If the rule of the General Bankruptcy Act is followed, property acquired after the filing of a petition for composition under the provisions of § 75 would not be subject to bankruptcy administration. Section 75 (n) in effect at the time of the filing of the petition leads to the conclusion that, at that time, a similar rule, as to property subsequently acquired, would apply.[7] At the time petitioner filed his first amendment, seeking to be adjudged a bankrupt, subsection (n) continued in the same form. It was changed by the Act of August 28, 1935, to the language shown below.[8] By the terms of the second and

---

[7] "(n) The filing of a petition pleading for relief under this section shall subject the farmer and his property, wherever located, to the exclusive jurisdiction of the court. In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the court, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition or answer was filed."

[8] "(n) The filing of a petition or answer with the clerk of court, or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court, praying for relief under section 75 of this Act, as amended, shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others, contracts for purchase, contracts for deed, or conditional sales contracts, the right or the equity of redemption where the

third paragraphs of § 4 of that Act, all rights of redemp-. tion of petitioner which had not expired in land within the jurisdiction of the court of bankruptcy were extended. By the earlier subsection (n) the line of cleavage, between property subject to the bankruptcy jurisdiction and property free from it, came at the date when the "farmer's petition or answer was filed." When this language was adopted there was no provision for a petition in bankruptcy under § 75. There was provision only for a peti-. tion for composition or extension.[9] By § 4 of the Act of

period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition.

"In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, or where the right under a deed of trust has not or had not become absolute, or where the sale has not or had not been confirmed, or where deed had not been delivered, the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section. The words 'period of redemption' wherever they occur in this section shall include any State moratorium, whether established by legislative enactment or executive proclamation, or where the period of redemption has been extended by a judicial decree. In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the courts, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition, asking to be adjudged a bankrupt, was filed with the clerk of court or left with the conciliation commissioner for the purpose of forwarding same to the clerk of court."

[9] Act of March 3, 1933, § 75 (c):

"(c) At any time within five years after this section takes effect, a petition may be filed by any farmer, stating that the farmer is insolvent or unable to meet his debts as they mature, and that it is

August 28, 1935, subsection (n) was changed to comport with subsection 75 (s), permitting a petitioner to amend and ask "to be adjudged a bankrupt." We are of the opinion that it is the date of filing this request for adjudication as bankrupt which fixes "the line of cleavage" as to the property. This conclusion is really in conformity with the reasoning governing the rule in the General Bankruptcy Act. There the first petition seeks an adjudication in bankruptcy. Under § 75, it is only the later amendment which does.[10] As the 120 acres had been reconveyed to the petitioner prior to his filing of the petition of October 11, 1935, seeking adjudication as a bankrupt, his interest in the 120 acres was subject to bankruptcy jurisdiction. As the land was reconveyed to the petitioner prior to the decree of foreclosure, petitioner was an owner entitled to redeem after the sale. Ind. Stat. Ann. (Burns, 1933) c. 40. The amendment of October 11, 1935, was the first opportunity to bring the 120 acres

desirable to effect a composition or an extension of time to pay his debts. The petition or answer of the farmer shall be accompanied by his schedules. The petition and answer shall be filed with the court, but shall, on request of the farmer or creditor, be received by the conciliation commissioner for the county in which the farmer resides and promptly transmitted by him to the clerk of the court for filing. If any such petition is filed, an order of adjudication shall not be entered except as provided hereinafter in this section."

[10] Section 75 as originally enacted was a part of Chapter VIII of the Bankruptcy Act, approved March 3, 1933, and did not contemplate an adjudication in bankruptcy. Section 73 of that Chapter reads as follows:

"Sec. 73. Additional Jurisdiction.—In addition to the jurisdiction exercised in voluntary and involuntary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in sections 74, 75, and 77 of this Act."

The Amendments of Bankruptcy Rules, Order of June 1, 1936, 298 U. S. 695, are based upon petitions for composition rather than bankruptcy. See particularly General Order L, p. 701.

into the jurisdiction of the Bankruptcy Court, and we think it had that effect.

*Second.* The conclusion that all the lands in controversy, except the 80.31-acre tract, are within the jurisdiction of the Bankruptcy Court under the petitioner's amendment asking to be adjudged a bankrupt and are lands subject to petitioner's right of redemption, as extended by subsection (n) of § 75, requires the reversal of the judgments below, as to these lands, unless the provisions of § 75 (n), extending the period of redemption, are unconstitutional. Respondent insists that these provisions are a direct invasion of the State's rights under the Tenth Amendment and violative of the respondent's own rights, by virtue of its title acquired by purchase at the judicial sale, in contravention of the Fifth Amendment.

The right of the Congress to legislate on the subject of bankruptcies is granted by the Constitution in general terms. "The Congress shall have power . . . To establish . . . uniform laws on the subject of Bankruptcies throughout the United States," Article I, § 8, clause 4. To this specific grant, there must be added the powers of the general grant of clause eighteen. "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers . . ." The subject of bankruptcies is incapable of final definition. The concept changes. It has been recognized that it is not limited to the connotation of the phrase in England or the States, at the time of the formulation of the Constitution.[11] An adjudication in bankruptcy is not essential to the jurisdiction. The subject of bankruptcies is nothing less than "the subject of the relations between an insolvent or nonpaying or fraudulent debtor and his

---

[11] *Adair* v. *Bank of America Assn.,* 303 U. S. 350, 354; *Continental Bank* v. *Chicago, R. I. & P. Ry. Co.,* 294 U. S. 648, 668.

creditors, extending to his and their relief." [12] This definition of Judge Blatchford, afterwards a member of this Court, has been cited with approval here. [13]

The development of bankruptcy legislation has been towards relieving the honest debtor from oppressive indebtedness and permitting him to start afresh. [14] By the Act of March 3, 1933, the Congress deliberately undertook the rehabilitation of the debtor as well as his discharge from indebtedness. [15] This legislation for rehabilitation has been upheld as within the subject of bankruptcies. [16] But respondent urges that under the Bankruptcy Clause Congress is confined to legislation for the adjustment of the debtor-creditor relationship, and insists that the purchaser at an Indiana judicial sale is not a creditor but a grantee with rights acquired by the purchase, separate and distinct from the rights and obligations arising from the creation of the debt. While there may be no relation of debtor and creditor between the bankrupt and the purchaser of his property at judicial sale, we think the purchaser at a judicial sale does enter into the radius of the bankruptcy power over debts. His purchase is in the liquidation of the indebtedness. The debtor has a right of redemption of which the purchaser is advised, and until that right of redemption expires the rights of the purchaser are subject to the power of the Congress over the relationship of debtor and creditor and its power to legislate for the rehabilitation of the debtor. The person whose land has been sold at fore-

[12] *In re Reiman,* 20 Fed. Cas. 490.

[13] *Continental Bank* v. *Chicago, R. I. & P. Ry. Co., supra,* 672; *United States* v. *Bekins, ante,* pp. 27, 47; *Hanover National Bank* v. *Moyses,* 186 U. S. 181, 187.

[14] *Williams* v. *U. S. Fidelity & G. Co.,* 236 U. S. 549, 554, 555; *Louisville Bank* v. *Radford,* 295 U. S. 555, 582.

[15] *Adair* v. *Bank of America Assn., supra,* pp. 354, 355, notes 2 and 3.

[16] *Wright* v. *Vinton Branch,* 300 U. S. 440, 456.

closure sale and now holds a right of redemption is, for all practical purposes, in the same debt situation as an ordinary mortgagor in default: both are faced with the same ultimate prospect, either of paying a certain sum of money, or of being completely divested of their land. We think the provision for the extension of the period of redemption comes clearly within the power of the Congress under the bankruptcy clause. But respondent presses a further argument that the Fifth and Tenth Amendments are violated.

(a) The Fifth Amendment is said to be violated and the property of respondent, the purchaser at the judicial sale, taken without due process,[17] by the provision for extension of the time of redemption. Section 75 (n) provides that "the period of redemption shall be extended . . . for the period necessary for the purpose of carrying out the provisions of this section." The stay may be approved for the period during which the debtor seeks to effect a composition,[18] and, as contemplated by § 75 (s), for a moratorium period not exceeding three years, during which the court's equitable supervision over the land continues, and a reasonable rental is required.[19] That such an extension is consonant with the due process clause of the Fifth Amendment is indicated by our decision in *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, where we held that neither the due process clause of the Fourteenth Amendment nor the contracts clause was violated by an emergency state statute authorizing extension of the period of redemption from foreclosure sales, for a just and equitable period not exceeding two years, conditioned on payment by the mortgagor of a reasonable rental, as directed by the court.

---

[17] Compare *Louisville Bank* v. *Radford,* 295 U. S. 555, 601.

[18] Cf. *Adair* v. *Bank of America Assn.,* 303 U. S. 350.

[19] See *Wright* v. *Vinton Branch,* 300 U. S. 440, 460 *et seq.*

The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract between petitioner and respondent. "Not only are existing laws read into contracts in order to fix obligations as between parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." [20] And the fact that in this case the purchaser at the foreclosure sale was also the mortgagee is not a determining factor. Any purchaser at a judicial sale must purchase subject to the possibility of the exercise of the bankruptcy power in a manner consonant with the Fifth Amendment.

We have held that § 75 (s) does not unconstitutionally affect the rights of the mortgagee.[21] We do not think the provision for extension of the period of redemption in § 75 (n) is invalid. The rights of the purchaser are preserved, the possibility of enjoyment is merely delayed. The rights of a purchaser, who under the state law is entitled to the redemption money or possession within a year, are not substantially different from those of a mortgagee entitled, on the maturity of the obligation, to payment or sale of the property.

(b) In view of our decision that the law is within the bankruptcy power, scant reliance can be placed on the Tenth Amendment. Respondent argues that to subject property bought in at a foreclosure sale to the extended redemption period and other provisions of § 75 (s) "would be a direct invasion of the powers reserved to the State by the Constitution, and a violation of [respondent's] property rights theretofore determined by the courts of the State of Indiana in accordance with the law of that State."

---

[20] *Home Bldg. & Loan Assn.* v. *Blaisdell, supra,* at page 435.

[21] *Wright* v. *Vinton Branch, supra.*

If the argument is that Congress has no power to alter property rights, because the regulation of rights in property is a matter reserved to the States, it is futile. Bankruptcy proceedings constantly modify and affect the property rights established by state law. A familiar instance is the invalidation of transfers working a preference, though valid under state law when made. Recent decisions illustrate other instances:

"A court of bankruptcy may affect the interests of lien holders in many ways. To carry out the purposes of the Bankruptcy Act, it may direct that all liens upon property forming a part of the bankrupt's estate be marshalled; or that the property be sold free of encumbrances and the rights of all lien holders be transferred to the proceeds of the sale. *Van Huffel* v. *Harkelrode,* 284 U. S. 225, 227. Despite the peremptory terms of a pledge, it may enjoin sale of the collateral, if it finds that the sale would hinder or delay preparation or consummation of a plan of reorganization. *Continental Illinois Nat. Bank & Trust Co.* v. *Chicago, R. I. & P. Ry. Co.,* 294 U. S. 648, 680-681. It may enjoin like action by a mortgagee which would defeat the purpose of [§ 75] subsection (s) to effect rehabilitation of the farmer mortgagor." *Wright* v. *Vinton Branch,* 300 U. S. at 470.[22]

Such action does not indicate a disregard of the property rights created by state law. The state law still establishes the norm to which Congress must substantially adhere; a serious departure from this norm, i. e., from the quality of the property rights created by the state law, has led to condemnation of the federal action as constituting a deprivation of property without due process.[23]

[22] See also *Adair* v. *Bank of America Assn., supra,* restricting the enforcement of a mortgage upon the gross proceeds of a crop.

[23] *Louisville Bank* v. *Radford,* 295 U. S. 555.

Property rights do not gain any absolute inviolability in the bankruptcy court because created and protected by state law. Most property rights are so created and protected. But if Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect these property rights, provided the limitations of the due process clause are observed.

In so far as the judgments below struck from the schedules the 80.31-acre tract and refused to permit amendment to show the character of appellant's interest, they are affirmed. As to the rest of the land in question, they are reversed.

*Affirmed in part; reversed in part.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.