**Appeal of John R. MOYNAGH, Jr., d/b/a John R. Moynagh & Co.**

**No. 77-1007.**

United States Court of Appeals, First Circuit.

Argued April 6, 1977.

Decided Aug. 24, 1977.

Marshall M. Schribman, Boston, Mass., for appellant.

Noel R. Bartsch, Worcester, Mass., with whom Seder & Seder, Worcester, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and MARKEY,* Chief Judge.

MARKEY, Judge.

This appeal is from an order of the district court entered October 29, 1976, affirming a revocation of appellant's discharge in bankruptcy granted August 12, 1975. We affirm.

On March 19, 1975, Moynagh filed a voluntary petition in bankruptcy. The Referee in Bankruptcy set June 10, 1975 as the date for the first meeting of creditors and July 10, 1975 as the last day for filing of objections to Moynagh's discharge.

At the first meeting of creditors, Moynagh was briefly examined by counsel rep-

---

* Of The Court of Customs and Patent Appeals, sitting by designation.

resenting the Guaranty Bank and Trust Co. of Worcester, Massachusetts (Bank), listed in the schedules accompanying the petition as a creditor holding a security interest in Moynagh's accounts receivable. During that examination Moynagh admitted that he had endorsed to his mother checks made payable to himself or his company. In response to questions concerning the total amount of the checks so endorsed, Moynagh stated that the amount, though not known exactly, was insignificant.

The Bank's examination was terminated when the Referee suggested that further questioning be pursued as provided in Rules Bankr.Proc. Rule 205(a), 11 U.S.C. (Examination on Application). During the progress of Moynagh's deposition under Rule 205(a), the Referee entered an order granting the discharge, no objection having been filed in the allotted time.

On August 20, 1975, the Bank filed a complaint seeking revocation of the discharge pursuant to § 15(1) of the Bankruptcy Act, 11 U.S.C. § 33(1),[1] alleging that Moynagh had fraudulently transferred checks of account debtors totalling in excess of $70,000 to an account in his mother's and sister's names in the Worcester County National Bank (hereinafter the WCNB account).

The Referee allowed in part Moynagh's motion for summary judgment, having

found that "[a]s to all of those items that there was knowledge, should have known, or apparently strong suspicion . . . there is no basis to revoke discharge under Section 15 . . . ."

The Bank filed an amended complaint containing additional allegations of fraudulent transfers. After a November 20, 1975 hearing on the merits, the Referee found, inter alia, that Moynagh had made: (1) fraudulent transfers of his property, (2) a false oath in his statement of affairs in matters pertinent to the discovery of assets, and (3) a materially false statement at the first meeting of creditors. For these reasons, the Referee concluded that the discharge should be revoked because it was obtained as a result of fraud upon the bankruptcy court.[2] The district court affirmed, and this appeal followed.

### ISSUE

The dispositive issue is whether Moynagh's discharge in bankruptcy can be revoked for fraud upon the bankruptcy court, and without a finding that the Bank lacked pre-discharge knowledge of Moynagh's transfers.[3]

### OPINION

■ Section 15(1) of the Bankruptcy Act requires that an applicant seeking revoca-

1. 11 U.S.C. § 33 provides in pertinent part:
   The court may revoke a discharge upon the application of a creditor, the trustee, the United States attorney, or any other party in interest, who has not been guilty of laches, filed at any time within one year after a discharge has been granted, if it shall appear (1) that the discharge was obtained through the fraud of the bankrupt, that the knowledge of the fraud has come to the applicant since the discharge was granted, and that the facts did not warrant the discharge . . . .

2. Typical of the Referee's reaction to Moynagh's testimony at the hearing was:
   I was under the impression as a result of that first meeting there may have been a few checks that we were going to deal with. I had no idea of the volume.
   And of similar import:
   [I]t was not until this hearing today that I realized it was substantially every check [i. e., every check received by Moynagh from an

account debtor subsequent to July 15, 1974, the approximate date on which the Bank gave notice to Moynagh and all of his account debtors of whom it was aware that henceforth all payments of accounts receivable should be made directly to the Bank].

3. Substantial portions of the parties' briefs are devoted to the irrelevant issue of whether the Bank's knowledge was acquired after the discharge. There is no merit in Moynagh's attack on the district judge's holding that the Referee's findings are not clearly erroneous. Those findings are supported by reasonable inferences from the testimony at the November 20, 1975 hearing. *In re Mascolo*, 505 F.2d 274 (1st Cir. 1974). Moynagh argues (in a footnote) that the district court violated Rule Bankr.Proc. Rule 809, 11 U.S.C., in failing to afford an oral argument. The testimony of record, however, was adequate to sustain the Referee's order, and argument before the district court would have served no useful purpose.

tion of a discharge in bankruptcy on the ground of fraud establish "that the knowledge of the fraud has come to the applicant since the discharge was granted." This appeal, however, does not involve fraud on an applicant for revocation. The Referee's order, which the district court affirmed, specifically found that Moynagh's conduct throughout the proceedings leading to his discharge constituted a *fraud on the bankruptcy court.* Accordingly, whether or not the Bank had pre- or post-discharge knowledge of Moynagh's fraudulent transfers is irrelevant.

Section 2(a)(12) of the Bankruptcy Act, 11 U.S.C. § 11(a)(12), invests a bankruptcy court with jurisdiction in equity to set aside discharges. Although Moynagh argues that the equity powers of bankruptcy courts have been previously exercised in cases involving mistake, excusable neglect, and the like, it cannot be said that a bankruptcy court may not invoke its equity power in other circumstances when the ends of justice so require.

Moynagh makes no effort to justify or excuse his conduct, arguing only that the Bank had knowledge, or should have known, of his fraudulent transfers. In this regard, Moynagh contends that the Referee's function was to act as an impartial arbiter and to decide the controversy solely on the basis of the parties' pleadings. However, we think the better view is that a Referee is not an impartial arbiter but a judicial officer whose duty it is to see that those appearing before him shall not invoke his authority for the accomplishment of fraud. Cf. *Zeitinger v. Hargardine-McKittrick Dry Goods Co.,* 244 F. 719 (8th Cir.), *cert. denied,* 245 U.S. 667, 38 S.Ct. 64, 62 L.Ed. 538 (1917).

An examination of the record before us establishes that Moynagh's omission of his transfer of nearly $80,000 to the WCNB account, as well as the existence of the account itself, from his statement of affairs and his knowingly false testimony at the first meeting of creditors had the effect of misleading the Referee into granting a discharge which would not otherwise have been granted. As stated in *Rash v. Metzger,* 31 F.2d 424 (3d Cir. 1929):

The law, which is almost universal, is that courts of equity have for a limited time full control over their own doings and when they discover error may, in furtherance of justice, correct it.

■ Bankruptcy legislation is intended to relieve an honest debtor from oppressive indebtedness and to permit him to start afresh. *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938). Having realized that Moynagh's discharge had been improvidently granted and that permitting it to stand would contravene the intent of the Bankruptcy Act, the Referee acted within his equity power in revoking it.

*Affirmed.*