**In the Matter of Ada Gray Powell BARNES, Debtor.**

**Ada Gray Powell BARNES, Plaintiff,**

**v.**

**ATLANTIC CREDIT CO.; National Finance Co.; Barclay's Finance Co.; Beneficial Finance Co.; Commercial Credit Co.; Provident Finance Co., Defendants.**

**In the Matter of William A. CHERRY and Elaine W. Cherry, Debtors.**

**William A. CHERRY and Elaine W. Cherry, Plaintiffs,**

**v.**

**PROVIDENT FINANCE CO.; Beneficial Finance Co. of Rocky Mount; Avco Financial Services of Fayetteville; National Finance Co., Defendants.**

**Bankruptcy Nos. 80–00038, 80–00666–8. Adv. Nos. 80–0061–AP, 80–0135–AP.**

United States Bankruptcy Court, E. D. North Carolina.

June 24, 1981.

Herbert Frank Allen, Tarboro, N. C., for plaintiffs.

James B. Craven, III, Durham, N. C., for defendant Beneficial Finance Co. of Rocky Mount.

## OPINION AND ORDER

THOMAS M. MOORE, Bankruptcy Judge.

This matter comes on to be heard upon the Motion for Summary Judgment filed by defendant, Beneficial Finance Co. of Rocky Mount, through its attorney, James B. Craven, III, on May 22, 1980. The answer filed by defendant, Beneficial Finance Co. of Rocky Mount, raised the question of constitutionality of 11 U.S.C. § 522(f)(2), and the United States of America has intervened and is represented by William Woodward Webb, Assistant United States Attorney, Raleigh, North Carolina. All of the other defendants in these adversary proceedings have failed to answer or otherwise defend the suits and default judgments have been entered as to them. These adversary proceedings are consolidated to determine whether § 522(f)(2), if applied retroactively, is constitutional.

After considering all the evidence and hearing oral arguments of counsel, the court finds the facts to be as follows:

## FINDINGS OF FACT

Both of these adversary proceedings involve liens obtained by the creditor prior to the enactment date of the Bankruptcy Reform Act of 1978 (hereinafter "Bankruptcy Code").

On August 3, 1977, Ada Barnes obtained a loan from Beneficial Finance Co. of Rocky Mount (hereinafter "Beneficial") in the amount of One Thousand Five Hundred and No/100 Dollars ($1,500.00) to be paid back in thirty-seven (37) monthly installments with a total pay-in of Two Thousand Twenty-Three and No/100 Dollars ($2,023.00). She signed a security agreement and UCC form giving Beneficial a security interest in all her household goods, including her toaster, silverware, miscellaneous mixed dishes, a hair dryer and one yellow trash can. Beside each item listed in the "Description of Security" is an amount estimated by Mrs. Barnes as the replacement value (the cost to the debtor "of purchasing new, substituted personal property of like kind and quali-

ty at current market prices"). At the time of the loan, the total replacement value as estimated by Mrs. Barnes was approximately One Thousand Five Hundred and No/100 Dollars ($1,500.00). There is no evidence that an independent appraisal was done to determine the actual value of the property at the time of the loan, nor is there evidence that the public records were searched to determine whether any prior liens existed.

Less than a year later, On May 30, 1978, Mrs. Barnes borrowed an additional One Thousand Five Hundred and No/100 Dollars ($1,500.00) from Beneficial, of which approximately One Thousand Two Hundred and No/100 Dollars ($1,200.00) was used to pay off the prior loan. No new UCC was executed. Sometime after Beneficial obtained its lien, a fire destroyed most of Mrs. Barnes' household goods.

On January 7, 1980, Mrs. Barnes filed a voluntary petition under Chapter 7 of the Bankruptcy Code and claimed all of her household goods as exempt. None of her household goods has a value of more than Two Hundred and No/100 Dollars ($200.00). Most of them are worth less than Fifty and No/100 Dollars ($50.00). The aggregate value of all her household goods is Five Hundred Sixteen and No/100 ($516.00).

At the time she filed her petition, there were six finance companies with non-possessory, non-purchase money security interests on her household goods including Beneficial. Her petition shows that approximately Four Thousand Four Hundred and No/100 Dollars ($4,400.00) was owed to these six finance companies. The outstanding balance on the indebtedness to Beneficial is now One Thousand Three Hundred Twenty-Four and 63/100 Dollars ($1,324.63).

On March 3, 1980, Mrs. Barnes filed a complaint to avoid all the non-possessory, non-purchase money security interests on her household goods pursuant to § 522(f)(2) of the Bankruptcy Code.

William Cherry and his wife, Elaine Cherry borrowed One Thousand Five Hundred and No/100 Dollars ($1,500.00) from Beneficial on July 7, 1977. The loan was to be repaid in installments over a thirty-seven (37) month period with a total pay-in of Two Thousand Twenty-Three and No/100 Dollars ($2,023.00). They executed a security agreement and UCC financing statement giving Beneficial a lien on their household goods. In the "Description of Security", the items, generally described by color, consisted of a green sofa and chair, a floral chair, a gold refrigerator and range, a white washing machine and dryer, etc. No serial numbers are shown and no brand names are specified on these items. The Cherrys estimated the replacement value of their household goods at the time of the loan at approximately Five Thousand and No/100 Dollars ($5,000.00).

On April 3, 1980, the Cherrys filed a voluntary petition under Chapter 7 and claimed their household goods as exempt. No item has a value of more than Two Hundred and No/100 Dollars ($200.00). There were four finance companies holding non-possessory, non-purchase money security interests on their household goods which were owed approximately Three Thousand and No/100 Dollars ($3,000.00). In order of priority under the Uniform Commercial Code, Beneficial's lien was last. The outstanding balance due Beneficial on its loan is One Thousand One Hundred Twenty-Seven and 66/100 Dollars ($1,127.66). The parties have stipulated that the aggregate value of the Cherrys' household goods is at least equal to the amount outstanding on the debt to Beneficial.

## ISSUE

The issue before the court is whether 11 U.S.C. § 522(f)(2) is constitutional, if applied to avoid non-possessory, non-purchase money security interests in household goods, created prior to the enactment date of the Bankruptcy Code and in which the debtors have now claimed exemptions.

## CONSIDERATION OF ISSUES

Article I, Section 8, Clause 4 of the Constitution of the United states provides that

Congress shall have the power "to establish . . . uniform laws on the subject of bankruptcies throughout the United States."

"[T]he constitutional grant of power over the subject of bankruptcies embraces the entire field of debtor-creditor relationships for the purpose of equitable distribution of a debtor's estate, rehabilitation of the debtor, and protection of the credit structure against anything materially contributing toward its impairment." 1 *Collier on Bankruptcy* ¶ 0.02 at 6 (14th ed. 1978).

■ Congress may impair contractual obligations when it enacts legislation pursuant to its constitutional power to "establish . . . uniform laws on the subject of bankruptcies" whether or not such legislation operates retroactively or prospectively. *Legal Tender Cases*, 79 U.S. (12 Wall.) 457 at 549, 20 L.Ed. 287 (1870). However, "the bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 at 589, 55 S.Ct. 854 at 863, 79 L.Ed. 1593 (1935).

The Bankruptcy Code was enacted on November 6, 1978, and became effective on October 1, 1979. Section 522(f)(2)(A) provides that the debtor may avoid non-possessory, non-purchase money security interest in household goods, to the extent that the lien impairs an exemption. Under § 522(d)(3), the debtor is permitted to claim an exemption of Two Hundred and No/100 Dollars ($200.00) in value in any particular item of household goods.

Beneficial contends that under *Radford*, § 522(f)(2), if applied retroactively, is unconstitutional in that it will deprive Beneficial of a substantial property interest without just compensation.

In *Radford*, the Supreme Court considered whether Section 75(s) of the Frazier-Lemke Act of 1934, which suspended mortgage foreclosures on real property during a five-year period in which the mortgagor was allowed possession of the mortgaged property while paying a fair rental value to be distributed to secured and unsecured creditors, was constitutional under the Fifth Amendment. Section 75(s), by its terms, only applied to preexisting mortgages.

The property involved was a 170 acre farm in which Radford had given a mortgage to the bank in exchange for an Eight Thousand and No/100 Dollars ($8,000.00) loan in 1922 and a One Thousand and No/100 Dollars ($1,000.00) loan in 1924. At the time of the loans, the farm had an appraised value of Eighteen Thousand and No/100 Dollars ($18,000.00). The loan was to be paid back in installments over a thirty-four year period.

The Court listed five property rights which the bank was being deprived of as a result of Section 75(s). These included the right to retain the lien until the debt was paid, the right to realize upon the security at a judicial sale, the right to determine when the time of that sale will be, the right to bid at the sale and the right to control the property during default and to receive rents between the time of default and sale of the property. *Radford* at 594, 55 S.Ct. at 865.

The Court concluded that the rights acquired by the bank prior to the Act and which had been taken away as a result thereof, were of substantial value and therefore, Section 75(s), as applied was unconstitutional under the Fifth Amendment. *Id.* at 601, 55 S.Ct. at 868.

Section 75(s) was amended within four months of *Radford* and was upheld as constitutional in *Wright v. Vinton Branch*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). The Court determined that Congress had preserved three of the mortgagee's rights enumerated in *Radford*. The rights preserved were (1) the right to retain the lien until the debt is paid, (2) the right to realize upon the security by a judicial sale, and (3) the right to bid at such sale. In upholding the statute, the Court noted that Congress in exercising its power under the Bankruptcy Clause, has broad powers to modify remedial and substantive rights of secured creditors. *Vinton Branch*, at 470, 57 S.Ct. at 565.

Even these last remaining rights are not absolute. In the case of *Wright v. Union Central Life Insurance Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), the Supreme Court held that the debtor had the right to have the mortgaged property appraised and to redeem it at its appraised value within a reasonable time. Here, the appraised value of the mortgaged property was Six Thousand and No/100 Dollars ($6,000.00) while the outstanding indebtedness was Fifteen Thousand Nine Hundred Three and 68/100 Dollars ($15,903.68).

This right of the debtor was even paramount to the mortgagee's right to realize upon the security at a judicial or public sale. If the debtor redeemed the property at its appraised value, the mortgagee was denied the right to a judicial or public sale. Thus, the only right still remaining to the secured creditor is the right to payment but only to the extent of the value of the property. *Union Central* at 278, 61 S.Ct. at 199.

The Supreme Court declared in an earlier case concerning the same property in *Union Central* that "a mortgage contract was made subject to constitutional power in Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract ..." *Wright v. Union Central Life Insurance Co.*, 304 U.S. 502 at 516, 58 S.Ct. 1025 at 1033, 82 L.Ed. 1490 (1938).

Congress has a substantial interest in seeing that a debtor who goes through bankruptcy comes out with adequate possessions to begin his fresh start and in protecting his discharge.

The historic purpose of exemption laws has been to protect the debtor from his creditors and to provide him with the basic necessities of life so that he will not be left destitute and a public charge. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

The Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary conducted hearings on H.R. 31 and H.R. 32 during 1975 and 1976. One of the participants in the hearings was David H. Williams, an attorney in the Division of Special Projects at the Federal Trade Commission. In his statement, he informed the Subcommittee that the Division of Special Projects had conducted an industry wide investigation of the consumer finance industry in the United States from 1972 through 1974. The investigation focused on consumer default and the use of statutory and contractual remedies to compel payment.

They visited one hundred and thirty (130) branch offices of twelve (12) major consumer finance companies in thirty (30) states. They found that "one of the most important and widely abused devices available to the large credit institution is a blanket security interest in household necessities. [H]ousehold goods are rarely seized. The reason for this restraint on the part of creditors is two-fold. Household goods have little or no direct economic value in the resale market. The markups on low cost furniture and appliances almost always exceed one hundred percent. When financing costs are added, it becomes clear that any intrinsic value which such commodities may have will never come close of offsetting the credit liability secured thereby." *Id.* app. at 171.

They found that the blanket security interest is used as "an effective lever for securing refinancings at appropriate stages of the collection cycle" and is "among the most effective levers available for securing an anticipatory reaffirmation of a debt which is otherwise dischargeable in bankruptcy." *Id.* app. at 172.

In the present cases, Beneficial's liens are not on real property, but are blanket liens on household goods which are necessary for the debtors' fresh start. In the Barnes case, this security interest includes her toaster, silverware, miscellaneous mixed dishes, a hair dryer and one yellow trash can. Most of the items covered by the lien have a value of less than Fifty and No/100 Dollars ($50.00). At the time of her first loan, the value of Mrs. Barnes' household goods equaled the amount of the loan.

When the petition was filed, there were six consumer finance companies with non-possessory, non-purchase money security interests on her household goods including Beneficial. Her petition shows that approximately Four Thousand Four Hundred and No/100 Dollars ($4,400.00) is owed to these six creditors while her household goods only have an aggregate value of Five Hundred Sixteen and No/100 Dollars ($516.00).

In the case of William and Elaine Cherry, there were four finance companies which held non-possessory, non-purchase money security interests on the debtors' household goods at the time the petition was filed with approximately Three Thousand and No/100 Dollars ($3,000.00) owed to these creditors. In order of priority under the Uniform Commercial Code, Beneficial's lien was last.

In both cases, at the time of the respective loans, the debtors estimated the value of the collateral at the cost to them of purchasing new, substituted property of like kind and quality at current market prices. There was no evidence as to the actual value of the property at the time of the loan or that an independent appraisal was done. Most of Mrs. Barnes' household goods were destroyed by fire after Beneficial acquired its lien.

Household goods are not stable collateral. They rapidly deteriorate by everyday usage. They do not have a fixed location like real property. They are easily moved and are not readily identifiable. In Beneficial's "Description of Security", the items are described generally by color. In the Cherry case, the collateral is described as a green chair and sofa, a floral chair, a gold refrigerator and range, a white washing machine and dryer, etc. No brand names for these items are specified and no serial numbers are shown. The collateral in the Barnes case is similarly described.

## CONCLUSIONS OF FACT AND LAW

This court concludes that Beneficial's property right was not of substantial value. *In re Pillow*, 8 B.R. 404 (Bkrtcy., D. Utah 1981). The collateral is household goods which are necessary for the debtors to begin their fresh start. They are not stable collateral as they are easily moved, not readily identifiable and are easily destroyed. Everyday usage causes rapid deterioration. As indicated by the finding of the Division of Special Projects at the Federal Trade Commission, they have little or no economic value in a resale market. H.R. Rep. No. 95–595, *supra* app. at 171.

In the Cherry case, Beneficial's security interest was fourth in priority under the Uniform Commercial Code. In the Barnes case, the replacement value of the property at the time of the loan was approximately equal to One Thousand Five Hundred and No/100 Dollars ($1,500.00), the amount of the loan. However, the loan was for a duration of three years. These facts indicate that these liens were not taken with a reasonable expectation that the household goods would be valuable enough to satisfy the debts in case of default. Instead, these liens were taken for their psychological effect to encourage reaffirmation and payment of the debts in full. *Matter of Campbell*, 8 B.R. 425 (Bkrtcy., S.D. Ohio 1981); H.R. Rep. No. 95–595, *supra* at 127. As such, § 522(f)(2) does not deprive Beneficial of a substantial property interest which is protected under the Fifth Amendment.

In addition, this court concludes that, like a mortgage contract, the contracts between Beneficial and these individual debtors creating the security interest in the debtors' household goods were made subject to the constitutional power of Congress to legislate on the subject of bankruptcies which was impliedly written into the contract. Therefore, there was no "Fifth Amendment" taking of a property interest. *See In re Pillow*, at 413. Now therefore,

IT IS ORDERED that the non-possessory, non-purchase money security interest of Beneficial Finance Co. of Rocky Mount in the household goods of Ada Gray Powell Barnes be, and the same hereby is, avoided to the extent that its lien impairs the exemptions claimed by Ada Barnes in her household goods; and

**954**

IT IS FURTHER ORDERED that the non-possessory, non-purchase money security interest of Beneficial Finance Co. of Rocky Mount in the household goods of William A. Cherry and Elaine W. Cherry be, and the same hereby is, avoided to the extent that its lien impairs the exemptions claimed by the debtors in their household goods.