**In the Matter of Arthur DRUMMOND, III and Patricia Drummond, Debtors.**

**Bankruptcy No. LR 81–984.**

United States Bankruptcy Court, E. D. Arkansas, W. D.

Dec. 22, 1981.

Jack Sims, Little Rock, Ark., for debtors.

ORDER CONDITIONALLY DENYING ORAL MOTION TO ABSTAIN FROM CASE AND CONFIRMING PLAN OF ARRANGEMENT PROVIDED A WRITTEN DEMONSTRATION OF COMPLIANCE WITH *IN RE TERRY*, 630 F.2d 634 (8th Cir. 1980) AND § 1322(b)(1) IS FILED WITHIN 15 DAYS

DENNIS J. STEWART, Bankruptcy Judge.

The debtors in this chapter 13 case have proposed a plan of arrangement under the terms of which they propose to make no meaningful payments to the affected unsecured creditors and, further, propose to avoid a lien, pursuant to § 522(f)(2) of the Bankruptcy Code, held by the secured creditor who now objects to confirmation of the plan of arrangement. This lien avoidance will have the effect of relegating the secured creditor to unsecured status and thus eliminating any and all payments to him, even as the debtors retain possession of his security, on any account. For, under the law which currently prevails in this district, it is considered appropriate to confirm a chapter 13 plan which proposes no meaningful payments to the class of unsecured creditors.

■ The initial objection of the creditor must be considered to be on the ground that, to permit lien avoidance in chapter 13, is to act directly contrary to the clear and explicit provision of § 1325 of the Bankruptcy Code that a secured creditor should retain his lien throughout the course of the chapter 13 proceedings.[1] But the lone published authority on this question which has been found, *In re Hagerman*, 7 B.C.D. 542 (W.D.Mo.1981), 9 B.R. 412 (W.D.Mo.1981), holds that lien avoidance is nevertheless available in chapter 13 proceedings. Admittedly, this decision does little more than hold that lien avoidance is proper in chapter 13 proceedings (1) despite the express letter of § 1325, *supra*, and (2) despite the canon of statutory construction which holds that a statutory scheme should not be interpreted so that one of its provisions would be merely surplusage.[2] Still, the decision is published authority on the question which this court must follow for the sake of uniformity of judgments.

■ It is next asserted that confirmation should be denied and the court should abstain from this case under § 305 of the Bankruptcy Code because of the unfair result which is produced by reason of the avoidance of this lien—i.e., that the secured creditor will not be paid the value of its claim but in fact will receive nothing. Lien avoidance, however, appears to have an unfair (and unconstitutional) result whether it is applied in chapter 13 proceedings or in chapter 7 proceedings. It is difficult to understand how it is either fair or constitutional to direct a secured creditor's property right for a nonpublic purpose and without just compensation. And it does not seem any less unfair or unconstitutional if the secured creditor has prior notice that his

1. See subsection (a)(5)(B)(1) of § 1325 to the effect that "with respect to each allowed secured claim provided for by the plan ... that the holder of such claim retain the lien securing such claim."

2. The reasoning in the *Hagerman* decision is to the effect that "[t]he constraint of Section 1325(a)(5) can be dealt with by concluding that, after lien avoidance, the creditor is not secured and there is, therefore, no 'allowed secured claim provided for by the plan.'" But this is only to beg the question of the applicability of lien avoidance in chapter 13 cases, despite the precise and explicit letter of § 1325, then subsection (a)(5)(B)(1) of § 1325 must be regarded as totally surplusage, with the whole lien avoidance matter to be controlled and determined by § 522(f) of the Code. It is a rudiment of statutory construction, however, that each provision of a statutory scheme is to be regarded as having a sensible purpose. "There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provision were used. Conversely, it will not be presumed that the legislature inserted idle or meaningless, redundant, or useless." 82 C.J.S. Statutes § 316, pp. 551–552.

property right may, in the event of bankruptcy, be subject to this summary expropriation.[3] Nevertheless, again, the controlling decisions have uniformly approved it,

**3.** It must be noted that retroactive application of section 522(f)(2) to liens on personal property which vested prior to the enactment date of the new Bankruptcy Code, November 6, 1978, has been declared to be an unconstitutional taking of property for a private purpose without just compensation in *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981). In that case, it was held that, under *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), "section 522(f)(2) (cannot) be constitutionally applied to a creditor's security interest which came into being prior to the enactment date of the (Bankruptcy) Reform Act ... Congress may not under the bankruptcy power completely take for the benefit of a debtor rights in specific property previously acquired by a creditor." 642 F.2d at 1197-1198. This decision has been appealed to the Supreme Court of the United States, where it is currently pending.

In terms of the effect of the bankruptcy laws upon security interests in personal property, a decision upon the retroactive constitutionality of section 522(f)(2) is not likely to have great meaning. Such security interests as vested prior to November 6, 1978, are a vanishing breed. It is the prospective effect of the statute which promises to have an important effect, not only upon the security interest which it nullifies, but upon bankruptcy and property law generally.

It does not appear that any litigants have yet effectively raised the issue of the constitutionality of prospective application of section 522(f)(2). That is perhaps because the Court, in the *Radford* case, *supra*, in ruling on a statute which dealt "only with pre-existing mortgages," stated clearly that it had "no occasion to decide whether the bankruptcy clause confers upon Congress the power to abridge the mortgagee's rights in specific property," but nevertheless stated in dictum, as a possibility, that "(the power over property pledged as security after the date of the Act may be greater than over property pledged before." 55 S.Ct. at 863. In one student law review note of more recent vintage, it has further been stated, without any citation of decisional authority, that "(p)rospective laws do not run afoul of the just compensation clause, for the creditors affected are not deprived of rights the law has given them, but simply are not extended those rights in the first place." Note, *Constitutionality of Lien Avoidance*, 94 Harvard L.Rev. 1616, 1628 (1981).

It is difficult to fathom, however, how prospective application of a law which purports to eradicate security interests which *continue* to vest under the laws of the several states is any less of a taking of these property interests than retroactive application. Prospective application, no less than retroactive application, would appear to violate the purpose of the Fifth Amendment which is "intended to protect the property and affairs of all citizens alike regardless of all other considerations, and forbids the taking of the property of one without just compensation and transferring it to another." *United States v. Rock Royal Corp.*, 26 F.Supp. 534, 550 (N.D.N.Y.1939), modified on other grounds, 307 U.S. 993 (1939). If the federal government may effectively eliminate the right of the states to create property interests, it may, consistent with constitutional principles, effectively eliminate all property interests—a result which the framers of the Fifth Amendment intended to prevent in designing the amendment to protect vested property interests, i.e., as a "bulwark against socialism and the impetus which would redistribute the nation's wealth." *Matter of Miller*, 8 B.R. 43, 47 (W.D.Mo.Bkrtcy.1980). But if the federal government must grant some recognition to state-created property interests, it cannot effectively eliminate state legislation on the subject. Thus, by means of the continuing operation of state law, as is further pointed out below, these security interests continue to vest and, under section 522(f)(2), continue to be "completely taken" for a private purpose and without just compensation.

To state that there is no limit on the bankruptcy clause's prospectively-operating power over property, however, appears to run squarely into the Tenth Amendment's reservation-of-powers clause. This is why it would appear that, even if the Supreme Court in the *Rodrock* case, *supra*, ultimately holds section 522(f)(2) to be constitutional as applied retroactively, it should still be unconstitutional in violation of the Tenth Amendment as applied prospectively. A long history of Supreme Court and other decisions has repeatedly held that the existence of a lien or other property interest "at the time of the commencement of .... proceedings in bankruptcy ... depend(s) *entirely* on the state laws." *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886) (Emphasis added.) It is true that the Congress has, under the bankruptcy clause, the power to "*alter* property rights" (emphasis added) created by the state law and that it has done so "in many ways," including empowering bankruptcy courts to order the marshaling of liens, to conduct sales free and clear of liens, and to enjoin the sale of collateral necessary to an effective reorganization. *Wright v. Union Central Ins. Co.*, 304 U.S. 502, 517, 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1938). It has also in other ways constitutionally delayed the property owner's right to occupation and enjoyment of the property. But it has not wholly nullified it and it cannot entirely "disregard ... the property created by state law ... [which] still establishes the norm to which Congress must substantially adhere." 304 U.S. at 517, 58 S.Ct. at 1034. Further, even if the state's power to legislate in this field could be effectively oblit-

with little or no attention to the momentous questions which such approval poses.[4]

█ Finally, it is suggested that, to confirm a chapter 13 plan based on such principles would mean that a chapter 13 plan could be confirmed which would provide no payments either to secured or unsecured creditors. The debtors rejoin that such is permitted by the governing statute, § 1325 of the Bankruptcy Code, so long as the creditors would not receive any value through chapter 7 liquidation.[5]

But the unmistakable holding of our court of appeals in *In re Terry*, 630 F.2d 634 (8th Cir. 1980), is that *some* meaningful payments must be proposed in a chapter 13 plan of arrangement.[6] Further, under the literal provisions of § 1322(b)(1) of the Bankruptcy Code, in providing for payments to one or more creditors and for no payments to other creditors, the debtors must demonstrate an absence of "unfair discrimination" against the classes to whom payments are not proposed to be made. Thus, a reasonable ground for this classification must be shown.

Therefore, for the foregoing reasons, it is hereby

ORDERED that the creditor's objections to confirmation of the plan of arrangement is conditionally denied and the plan of arrangement accordingly conditionally confirmed *provided* that, within 15 days of the date of entry of this order, the debtors demonstrate in writing to the court the compliance of the plan of arrangement with *In re Terry, supra,* and § 1322(b)(1) of the Bankruptcy Code.

erated by operation of the bankruptcy clause, consistently with the prohibitions of the Tenth Amendment, such action would be without the purpose of the bankruptcy clause itself. The bankruptcy clause is to be invoked to promote the rehabilitation of the debtor. This has never been thought to justify or enable legislation to "supply him with capital" or other previously unowned wealth. *Louisville Joint Stock Land Bank v. Radford, supra,* 295 U.S. at 582, 55 S.Ct. at 859.

4. See, e.g., *Matter of Ward*, 14 B.R. 549, 555, n.2 (S.D.Ga.1981); *Matter of Lovett,* 11 B.R. 123 (W.D.Mo.1981).

5. See subsection (a)(4) of § 1325 of the Bankruptcy Code to the following effect: "the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date".

6. "We think that section 101(24) contemplates that a debtor make payments, and that the debtor's income sufficiently exceeds his expenses so that he can maintain a payment schedule." 630 F.2d at 635.